PD-1542-15

PD-1542-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/24/2015 2:45:56 PM
Accepted 11/25/2015 11:11:47 AM
ABEL ACOSTA
CLERK

NO. PD_____-15

# IN THE
# COURT OF CRIMINAL APPEALS
# OF TEXAS

**HOWARD THOMAS DOUGLAS,**
**Petitioner/Appellant**

**vs.**

**THE STATE OF TEXAS,**
**Respondent/Appellee**

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

**From Third Court of Appeals (Austin) No. 03-13-00092-CR, and**
**From Cause No. D-1-DC-10-900204, in the 331st District Court, Travis County**

J. Edward Niehaus
SBN 24074812
BODKIN NIEHAUS DICKSON, PLLC
207 W. HICKORY ST. SUITE 309
DENTON, TX 76201
TEL. (940) 600-1295
FAX. (888) 314-7695
JASON@BNDLEGAL.COM

**ATTORNEY FOR APPELLANT**

**Oral Argument Requested**

FILED IN
COURT OF CRIMINAL APPEALS

November 25, 2015

i

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

Identity of Parties and Counsel .................................................................................... v

STATEMENT REGARDING ORAL ARGUMENT ................................................ 2

STATEMENT OF THE CASE ....................................................................................... 2

STATEMENT OF PROCEDURAL HISTORY ......................................................... 2

GROUND FOR REVIEW ONE ................................................................................... 3

Whether the Court of Appeals erred in interpreting the statutory definition of "deception" as defined by Tex.Pen.Code 31.01(a), and if that error resulted in the Court of Appeals reaching the incorrect conclusion in its sufficiency of the evidence analysis. ...................................................................... 3

Facts ............................................................................................................................. 3

Argument and Authorities ...................................................................................... 5

   1.   *Legal and Statutory Basis for Appellant's Assertion of Error* .......................................... 5

   2.   *Textualist Analysis of the Statute Supports Appellant's Assertion that the Court of Appeals erred in Interpreting the Statute* ...................................................................... 6

   3.   *The Court Should Grant Review in Order to Correct the Court of Appeals' Error in Applying the Definition of "Deception" to the Element of "by deception' Contained in Tex. Pen. Code 32.46(a)(1).* ........................... 8

PRAYER FOR RELIEF ............................................................................................... 10

CERTIFICATE OF COMPLIANCE ........................................................................ 11

CERTIFICATE OF SERVICE .................................................................................... 11

Appendix – Court of Appeals Opinion .................................................................. 12

# INDEX OF AUTHORITIES

**Cases**

*Boykin v. State*, 818 S.W.2d 782, 786 n.4 (Tex. Crim. App. 1991)......................................................7

*Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012)...............................................................7

*Ex parte Valdez*, 401 S.W.3d 651, 655 (Tex. Crim. App. 2013) ........................................................7

*Getts v. State*, 155 S.W.3d 153, 157 (Tex. Crim. App. 2005).............................................................7

*Johnson v. State*, 423 S.W.3d 385, 394 (Tex. Crim. App. 2014) .......................................................8

*Liverman v. State*, 2015 Tex. Crim. App. LEXIS 992, (Tex. Crim. App. Sept. 23, 2015).........3, 8

*Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012)......................................................7

*Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014)............................................................7

*Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014)......................................................7

*State v. Colyandro*, 233 S.W.3d 870, 875 (Tex. Crim. App. 2007) ....................................................7

*State v. Cowsert*, 207 S.W.3d 347, 350 (Tex. Crim. App. 2006) ........................................................7

*State v. Young*, 242 S.W.3d 926, 928 (Tex. Crim. App. 2008).........................................................7

*Tha Dang Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012) ................................8, 10

*Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008)......................................................8

*Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)......................................................10

**Statutes**

Tex. Pen. Code §32.46(a)(1) .......................................................................................................2, 6, 8

Tex. Pen. Code §32.46(d)(1) ..........................................................................................................6, 8

Tex. Pen. Code §31.01 ..................................................................................................................6, 9

**Other Authorities**

Connie H. Pfeiffer, <u>Statutory Construction,</u> (2015)....................................................................7

**Rules**

Tex. R. App. Pro. 39.1....................................................................................................................2

Tex. R. App. Pro. 66.3(d) ...........................................................................................................3, 6

**Treatises**

Abbe R. Gluck, The States as Laboratories of Statutory Interpretation: Methodological
   Consensus and the New Modified Textualism, 119 YALE L. J. 1750, 1765 (2010)..............7

## Identity of Parties and Counsel

**1. Trial Judge:** The Honorable DAVID CRAIN, Presiding Judge of the 331st Judicial District Court of Travis County, 509 West 11th St., Austin, TX 78701.

**2. Appellant:** Dr. Howard Thomas Douglas, 5729 Lebanon Road, Suite 144155, Frisco, TX 75034.

**3. Counsel for Appellant:**

**a.** Trial Counsel: Mark Brunner (now an ADA in Polk County).

**b.** Direct Appeal: Craig Price, 2871 Lake Vista Dr #150, Lewisville, TX 75067

c. Petition: J. Edward Niehaus, 207 W. Hickory St. Suite 309, Denton, Texas 76201.

**4. Counsel for the State of Texas:**

**a. Trial:** The State of Texas was represented by Donna Crosby, Travis County Assistant District Attorney.

**b. Appeal:** The State is represented on appeal by and through Rosemary Lehmberg, Criminal District Attorney of Travis County, 509 West 11th St., Austin, TX 78701.

NO. PD-_____-15
_____

# IN THE
# COURT OF CRIMINAL APPEALS
# OF TEXAS
_____

**HOWARD THOMAS DOUGLAS,**
                    **Petitioner/Appellant**
**VS.**

**THE STATE OF TEXAS,**
                    **Respondent/Appellee**

_____

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
_____

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant, **HOWARD THOMAS DOUGLAS**, respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

The Court of Appeals committed an error of statutory construction in its analysis of "deception" as an element of the offense of Securing Document By Deception (Tex.Pen.Code 32.46(a)(1)).

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplify the facts and clarify the issues. *See* Tex. R. App. Pro. 39.1.

## STATEMENT OF THE CASE

Appellant was convicted by a jury for the offense of Securing Execution of Document By Deception[1] (Tex.Pen.Code 32.46(a)(1)), (Opinion at 1; CR 186). Appellant timely filed a Motion for New Trial and a Notice of Appeal [CR 171-175; 177-184]. In the Court of Appeals, Appellant raised two issues: first, he challenged the legal sufficiency of the evidence, and second, he challenged the effectiveness of his trial counsel, (Opinion at 4, 12). The Court of Appeals affirmed the conviction, this Petition challenges the Court of Appeals ruling on only the first issue raised in the Court of Appeals.

Appellant raises one (1) issue in this Petition for Discretionary Review. Appellant asserts that the Court of Appeals failed to correctly apply the statutory definition of "deception" when engaging in its sufficiency of the evidence analysis, and the failure to correctly analyze whether "deception" occurred resulted in the Court of Appeals reaching the incorrect result.

## STATEMENT OF PROCEDURAL HISTORY

On **August 26, 2015,** the Third Court of Appeals at Austin Texas, affirmed the

---

[1] Appellant was sentenced to eight years imprisonment (probated for 10 years), a fine of $5,000, and restitution in an amount of $98,411.03.

conviction. *Howard Douglas Thomas v. State* 03-13-00092-CR, (Opinion at 16). On **September 10, 2015**, Appellant filed both a Motion for Rehearing and a Motion for Rehearing *En Banc*. Both Motions were denied on **October 29, 2015**. This Petition for Discretionary Review is being filed on ***Tuesday, November 24, 2015***. Appellant will send this petition to the Court by delivering ten (10) file-stamped copies to FedEx on the ***date following*** its acceptance by the Clerk of the Court to be delivered by overnight delivery to the Court of Criminal Appeals.

## GROUND FOR REVIEW ONE

> **Whether the Court of Appeals erred in interpreting the statutory definition of "deception" as defined by Tex.Pen.Code 31.01(a), and if that error resulted in the Court of Appeals reaching the incorrect conclusion in its sufficiency of the evidence analysis.**

The Appellant would submit that the Court of Appeals has "misconstrued a statute" in a manner that has altered the outcome of the proceedings. Accordingly, this Court should grant review of the case. *See* Tex. R. App. Pro. 66.3(d). Appellant's Petition raises a question regarding statutory construction similar to that recently decided by the Court in *Liverman v. State*, 2015 Tex. Crim. App. LEXIS 992, (Tex. Crim. App. Sept. 23, 2015).[2]

## Facts

Appellant is one of multiple doctors charged and convicted in Travis County's pay-to-prosecute agreement with Texas Mutual Insurance Company ("TMIC", where TMIC provides salary compensation (approximately $430,000USD per year) to the Travis County District

---

[2] In *Liverman v. State*, 2015 Tex. Crim. App. LEXIS 992, (Tex. Crim. App. Sept. 23, 2015) the Court ruled on the "sign or execute" language in Texas Penal Code 32.46(a)(1).

Attorney's Office to prosecute cases on their behalf.[3]

Appellant's business, WME[4] would bill TMIC for these services according to certain authorized billing codes, and TMIC would then issue a check to WME based on their audit of WME's bills. [3 RR 25-34] TMIC would often pay WME less than the amount billed by WME. [3 RR 41-47]

Appellant and TMIC disagree on the billing procedure for FCEs. [4 RR 49-51]; [3 RR 36 - 38]; (Opinion at 9 – 13). Appellant and WME took the position that it was permitted by industry standards to bill for a maximum of 16 units – with each unit representing a quarter hour -- if the WME agents spent that amount of time working on the FCE file, regardless of whether the agent was meeting face-to-face with the patient. [4 RR 49-51]

In contract, TMIC, and the State, took the position that WME could bill only for the amount of time that WME's representative, whether it was a physician, a technician or some other employee, spent in a face-to-face consultation or meeting with the person for whom the FCE was being conducted (i.e., the patient). [3 RR 37]

Appellant spent much of his testimony discussing what he believes to be the appropriate billing methodology for FCEs. (Opinion at 10). He also "offered the testimony of Konrad Kuenstler, an attorney and physical therapist who has performed over 1,000 FCEs, in support of his billing methodology. Kuenstler testified that doctors can bill for the time

---

[3] https://www.texastribune.org/2015/10/25/emails-prosecutors-got-texas-mutual-great-publicit/ (last viewed 11/20/15)

[4] WME, the corporate entity, was also indicted and convicted. WME is not a party to this Petition

spent on medical review and written reports." (Opinion at 10).

Appellant "insisted that the billing method was reasonable and proper and denied that the billing procedure violated the medical fee guidelines." (Opinion at 10). He also "insisted that the State's construction was incorrect, he disagreed with it, and his construction was correct." (Opinion at 10). The Court of Appeals has identified Appellant's subjective belief that his methodology was permissible.

In contrast to this, the Court of Appeals found:

> …that Douglas, as the owner and medical director of the company, acting alone or in concert with Barbara, established WME's policy for submitting its bills to Texas Mutual, that he determined that it should submit four hours on every FCE, regardless of the actual time required, that he knew that WME was submitting bills for time not spent with the patient, and that he knew this was done for the purpose of causing Texas Mutual to pay fees based upon the forms submitted. (Opinion at 11).

The Opinion by the Court of Appeals does not address the element of the offense that Appellant did not believe his assertions to be true.

## **Argument and Authorities**

1. *Legal and Statutory Basis for Appellant's Assertion of Error*

Appellant asserts an error in the construction and application of the statutory definition of "deception" that, had no error been committed, would compel a result contrary to that reached by the Court of Appeals in ruling on Appellant's challenge to the evidentiary sufficiency (Appellant's Issue One in the Third Court of Appeals). *See* Tex. R. App. Pro. 66.3(d). The elements of the offense are listed in the statute defining the offense.

---

"A person commits an offense if, with intent to defraud or harm any person, he, *by deception*: (1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person." Tex. Pen. Code §32.46(a)(1)(emphasis added).

The definition of "deception" from Texas Penal Code §31.01, is incorporated into this offense. *See* Tex. Pen. Code §32.46(d)(1). "Deception" requires: "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, *and that the actor does not believe to be true*." Tex. Penal Code §31.01[5] (emphasis added).

The error Appellant argues, that the Court misapplied the definition in §31.01 in its analysis of the evidentiary sufficiency supporting a conviction under §32.46, is a question of statutory construction, reviewed *de novo* by this Court. Questions of statutory construction are a frequent ground for this Court to grant review. *See* Tex. R. App. Pro. 66.3(d).

2. *Textualist Analysis of the Statute Supports Appellant's Assertion that the Court of Appeals erred in Interpreting the Statute*

This Ground for Review will be resolved by interpreting the interplay between the definition of "deception" in Texas Penal Code §31.01 and the "by deception" element of Texas Penal Code 32.46(a)(1). Appellant asserts that the Court of Appeals methodology for interpreting "by deception" is inconsistent with this Court's approach, and that this Court's approach is the superior method.

---

[5] This is the definition used by the Court of Appeals.

Appellant notes that while "[t]he United States Supreme Court … is not committed to a single interpretive methodology," this Court "has explicitly committed itself to textualism." Connie H. Pfeiffer, <u>Statutory Construction</u>,[6] (2015); *see also* Abbe R. Gluck, <u>The States as Laboratories of Statutory Interpretation: Methodological Consensus and the New Modified Textualism</u>, 119 YALE L. J. 1750, 1765 (2010); *Boykin v. State*, 818 S.W.2d 782, 786 n.4 (Tex. Crim. App. 1991). "Although Section 311.023 of the Texas Government Code invites, but does not require, courts to consider extratextual factors when the statutes in question are not ambiguous, such an invitation should be declined for the reasons stated in the body of this opinion." *See Boykin v. State*, 818 S.W.2d 782, 786 n.4 (Tex. Crim. App. 1991).

Just last year, this Court addressed the proper methodology for construing a statute:

> In construing a statute, this Court must seek to effectuate the "collective" intent or purpose of the legislators who enacted the legislation. *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). In interpreting statutes, we presume that the Legislature intended for the entire statutory scheme to be effective. *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012). When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd consequences that the Legislature could not have possibly intended. *Ex parte Valdez*, 401 S.W.3d 651, 655 (Tex. Crim. App. 2013); *Boykin*, 818 S.W.2d at 785. A statute is ambiguous when the statutory language may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding. See *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012). *Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014)

---

[6] Connie H. Pfeiffer, <u>Statutory Construction</u>, Presented at the 25th Annual Conference on State and Federal Appeals, June 4-5, 2015, citing to multiple authorities re-confirming this Court's preference for textualism. *See illustratively*, *Ex Parte Hernandez*, 275 S.W.3d 895, 898 n.14 (Tex. Crim. App. 2009); *State v. Young*, 242 S.W.3d 926, 928 (Tex. Crim. App. 2008); *State v. Colyandro*, 233 S.W.3d 870, 875 (Tex. Crim. App. 2007); *State v. Cowsert*, 207 S.W.3d 347, 350 (Tex. Crim. App. 2006); *Getts v. State*, 155 S.W.3d 153, 157 (Tex. Crim. App. 2005).

The Court has also, as recently as September of this year, granted review to interpret another provision of Section 32.46(a)(1). *See Liverman v. State*, 2015 Tex. Crim. App. LEXIS 992 (Tex. Crim. App. Sept. 23, 2015)(interpreting the "sign or execute" language of 32.46(a)(1)). Appellant's petition raises a similar question to that raised in *Liverman*, to-wit: does proof of the "by deception" element of the offense require evidence of Appellant's subjective knowledge that he was creating a false impression?

3. *The Court Should Grant Review in Order to Correct the Court of Appeals' Error in Applying the Definition of "Deception" to the Element of "by deception' Contained in Tex. Pen. Code 32.46(a)(1).*

Statutory interpretation is a question of law that this Court reviews *de novo. Tha Dang Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012); *see also Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008); *Johnson v. State*, 423 S.W.3d 385, 394 (Tex. Crim. App. 2014).

Here, deception is an essential element that the State must prove to secure a conviction for an alleged violation of Texas Penal Code §32.46(a)(1). The definition of deception from §31.01 is specifically incorporated into the offense by Texas Penal Code §32.46(d)(1). Where the definition of deception is incorporated into the offense, the State must prove deception occurred in order to prove that element of the offense. "Deception" requires: "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, *and that the actor does not believe to be true.*" Tex. Penal

Code §31.01[7] (emphasis added). Use of "the actor" shows this to be a subjective standard, *not* an objective standard.

The Court of Appeals ruled:

> …that Douglas, as the owner and medical director of the company, acting alone or in concert with Barbara, established WME's policy for submitting its bills to Texas Mutual, that he determined that it should submit four hours on every FCE, regardless of the actual time required, that he knew that WME was submitting bills for time not spent with the patient, and that he knew this was done for the purpose of causing Texas Mutual to pay fees based upon the forms submitted. (Opinion at 11).

Assuming *arguendo* that each of the above quoted conclusions from page 11 of the Court of Appeals' Opinion is correct, the above-referenced conclusions do nothing to dispute Appellant's subjective belief that "the State's construction was incorrect, he disagreed with it, and his construction was correct."(Opinion at 10). That Appellant billed <u>every</u> insurance company the same way he invoiced TMIC is further evidence that he had a subjective belief in the accuracy of his accounting methodology. *See* [CR 78 – 92] (listing insurance companies to which Appellant submitted similar billing sheets).

In other words, the conclusion that the Court of Appeals reached, which is quoted above, does not show proof of <u>every</u> element of the offense, yet the Court of Appeals still found the evidence to be sufficient. No "deception" (as defined by §31.01) is identified in the Court's incorrect disposition of Appellant's sufficiency of the evidence challenge.

Not only did Appellant have an actual, subjective, belief that his actions were lawful, he

---

[7] This is the definition used by the Court of Appeals.

has support for that belief, (*See* Opinion at 10). No contrary evidence was presented regarding Appellant's subjective mental state. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *See, e.g., Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). "'[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them,' while '[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.'" *Id.*

Appellant requests the Court grant review to determine the correct methodology for applying the statutory definition of "deception" to the offense for which Appellant was convicted. Where, as here, the statutory text (the definition of "deception") is unambiguous, this Court's "analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App. 2012). The Court of Appeals erroneous interpretation of the "by deception" element of the offense resulted in the subtraction of that element from the offense. This Court should grant review to correct that error in statutory construction.

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

Respectfully submitted,


/s/ J. Edward Niehaus
J. Edward Niehaus
SBN 24074812
Bodkin, Niehaus, & Dickson, PLLC
207 W. Hickory St. Suite 309
Denton, Texas 76201
Phone: (940) 600 1295 EXT 701
FAX: (888) 314-7695
JASON@BNDLEGAL.COM

**ATTORNEY FOR APPELLANT**


## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this brief is 2,795.

/s/ J. Edward Niehaus
J. Edward Niehaus


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct electronic copy of the foregoing Appellant's PDR was hand delivered to the Client, and a true and correct copy compliant with the E-Filing rules adopted by the Texas Supreme Court, have been served on the State Prosecuting Attorney and the Travis County District Attorney's Office on this 24-Nov-15.

/s/ J. Edward Niehaus
J. Edward Niehaus

# Appendix – Court of Appeals Opinion

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00092-CR

**Howard Thomas Douglas, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-10-900204, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Howard Thomas Douglas was found guilty by a jury of the offense of securing execution of a document by deception, a felony of the third degree.[1]  The trial court assessed his sentence at eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice but suspended the sentence and placed him on community supervision for ten years. In addition, Douglas was ordered to pay a fine of $5,000 and restitution of $98,411.03.  Douglas filed a motion for new trial, which the trial court denied.  He appeals.  We will affirm.

---

[1] We note that the judgment does not correctly conform to the procedures at trial.  Although the finding of guilt and the sentencing portion are correct, the judgment recites that Douglas waived a jury and pleaded guilty, when in fact he pleaded not guilty and submitted the case to the jury. While the jury was deliberating punishment, Douglas waived the jury and submitted punishment to the trial court.

**BACKGROUND**

In about 2004, Douglas, a medical doctor, and his 23-year-old daughter, Barbara Douglas, established a business called Western Medical Evaluators, Inc. (WME).[2] Douglas was the medical director and Barbara was named president of the company. WME provided medical services in the workers' compensation sector to entities insured by Texas Mutual Insurance Company. WME contracted with designated doctors to perform designated doctor examinations (DDE) on patients claiming workers' compensation benefits. Designated doctors travel all over the state performing their examinations. The purpose of a DDE is to obtain an independent assessment of the injured employee's condition at the request of the Texas Department of Insurance (the Department). Douglas also performed examinations himself.

During the course of performing a DDE, the designated doctor may request a functional capacity evaluation (FCE) of the employee to determine the employee's ability to return to work or perform certain jobs. An FCE is administered by a technician. WME employed several technicians who accompanied doctors to patient examinations. Upon the doctor's order, a technician performed the FCE while still with the patient. After performing an examination, WME billed Texas Mutual by means of a form entitled HCFA 1500. The form is completed by employing codes, known as CPT codes, to inform the insurance company what test or exam was performed in the examination and the amount of time it took.[3] The form reflects the time the doctor or technician spent on the matter in increments of quarter hours.

---

[2] For clarity, we will refer to appellant's daughter by her first name.

[3] The code for an FCE is 97750 or 97750FC.

When WME was first formed, it only performed DDE exams and Douglas was the only doctor. Later, the company added other doctors and staff and began administering FCE exams. The designated doctors receive about 60% of the charges for a DDE; WME received almost all of the compensation for an FCE.

The evidence was undisputed that, under the medical guidelines, the maximum amount of time that can be billed for an FCE is 16 quarter-hour increments, or 4 hours. Based upon the HCFA 1500 form submitted, Texas Mutual would issue a check to WME. Texas Mutual issued checks to WME totaling $103,821.99 during the time period at issue.

William Muhr, an investigator for Texas Mutual, became suspicious when he recognized that every bill received from WME requested the maximum compensation of 4 hours for every FCE. Muhr spoke to 146 patients examined by WME and determined that the average time the WME technician actually spent with patients was only 39 minutes. Muhr filed a complaint with the Travis County District Attorney's Office. The underlying prosecution ensued.

Douglas, Barbara, and WME were each charged in separate indictments with the offense of securing execution of documents by deception. *See* Tex. Penal Code § 32.46(a)(1).[4] That is, to paraphrase as to Douglas, the State alleged that, pursuant to a scheme or course of conduct and with intent to defraud or harm Texas Mutual, Douglas by deception created or confirmed a false impression of fact by causing HCFA forms to be submitted to Texas Mutual for payment of services of sixteen units when these services were not rendered, not believing it to be true, which

---

[4] A person commits an offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. Tex. Penal Code § 32.46(a)(1).

3

deception caused Texas Mutual to execute documents affecting its property. The pecuniary value of the property affected was alleged to be $20,000 or more but less than $100,000. Thus, the offense charged was a third degree felony. *Id*. § 32.46(b)(5).[5] Douglas and WME were tried together, although by the time of trial WME had ceased functioning and was out of business. Before her father's trial, Barbara pleaded no contest to her charges and received deferred adjudication. She testified at trial, as did Douglas.

Douglas complains on appeal that the evidence at trial was legally insufficient to prove that he acted with the intent to defraud or harm, that he engaged in deception that caused Texas Mutual to execute any document, or that the pecuniary amount of the documents met the jurisdictional amount required for a third degree felony. He also complains that the evidence did not support the amount of restitution ordered. In the alternative, Douglas requests a new trial on the basis that he was denied effective assistance of counsel.

## DISCUSSION

**Legal sufficiency of evidence supporting conviction**

When reviewing the sufficiency of the evidence to support a criminal conviction, the appellate court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a

---

[5] The offense is a felony of the third degree if the value of the property, service, or pecuniary interest is $20,000 or more but less than $100,000. *Id*. § 32.46(a)(5). The indictment includes a list of Texas Mutual payments by patients' names, dates, amounts charged, and amounts paid, and the State introduced voluminous records into evidence to support the charges. The State abandoned payments received after January 31, 2008, and the indictment was amended to reflect the amendment.

4

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We must keep in mind that it is the factfinder's duty to weigh the evidence, resolve any conflicts, and make reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We presume that any conflicting inferences were resolved in favor of conviction, and we defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The underlying basis for the criminal allegations arose out of the amount of time and, therefore, money that WME charged Texas Mutual for performing FCEs. As Douglas acknowledges in his brief, the State presented testimony from numerous witnesses that WME was not entitled to bill for time in which the physician or other health care provider was not in the presence of the patient. He also recognizes that the State presented evidence that WME had, in fact, billed Texas Mutual for time that was not spent in face-to-face meetings or consultations with each patient. In his testimony, Douglas acknowledged that WME billed for time not spent with the patient and that it was his decision to bill the maximum time for each FCE, but he insists that the practice was justified.

Martha Luevano, an employee of the Department's Workers' Compensation Division, testified about the medical fee guidelines, Labor Code Rules, and American Medical Association CPT Codes used in Texas that describe, define, and govern FCEs and the billing and paying of FCE fees. She testified that compensation for an FCE requires direct one-on-one patient contact and can only be billed for actual time spent face-to-face with a patient, billed in quarter-hour increments, for

a maximum of 16 units, or 4 hours.[6]  Preparation time and time spent generating a report cannot be included in billing time.  The Department has a website, training, and a dedicated telephone help line for medical providers.  She was not aware of any communication that WME or Douglas had attempted with the Department concerning FCE billing.

Three patients and several WME technicians were among the witnesses who testified.  The patients testified that the FCE took only 15 to 30 minutes.  One patient stated that she did not undergo a second FCE, although WME billed for a second one.  Three technicians testified that "face to face" time with a patient for an FCE took between 15 to 40 minutes, 45 minutes to an hour, and 25 to 35 minutes, respectively.  The reports took 10 to 15 minutes to complete.  No one spent four hours on an FCE, although WME billed the maximum for each one.  One technician testified that technicians were paid an extra $25 as an incentive to do more FCEs.

The head of WME's accounts receivable, Michelle Worden, testified that an exam room was across from her office and that the exams took about 30 minutes.  According to her, there was a directive from Douglas to bill the maximum on all FCEs.  When she refused to collect the maximum on inflated bills, Barbara fired her.

The manager of WME's accounts receivable, Kenna Johnson, had an office near the exam rooms.  The longest exams took 45 minutes.  She never saw one take 4 hours.  She noticed that

---

[6] The CPT code for an FCE reads as follows:

**Tests and Measurements**
Requires direct one-on-one patient contact.
*****
97750  Physical performance test or measurement (e.g., musculoskeletal, functional capacity), with written report, each 15 minutes.

the number of FCEs increased and that every exam began to have an FCE, all billed at 4 hours. Johnson told Barbara that the bills were not correct. Barbara informed Johnson that Douglas had talked to the Department and that WME's billing was perfectly fine, which Johnson did not believe. Johnson refused to collect on the bills, and Barbara fired her.

Lena Schockley worked in accounts receivable and billing. She testified that Douglas and Barbara told the technicians to perform an FCE on every patient, even if the doctor did not request one. If the report showed that no FCE was needed, Shockley was instructed to change the report to reflect that an FCE was needed; Barbara told her to bill each FCE at 4 hours. If the report showed only 6 units of time were spent with the patient, employees were instructed to put a 1 in front of the 6, to reflect 16 units of time, the maximum.

Mimi Stout, who worked in accounts receivable, testified that an FCE was always billed at 4 hours. She was one of several WME employees who drove to Austin to report the inappropriate billing to the Department.

Warren King solicited insurance companies and designated doctors for WME. He noticed that every patient had an FCE and that every one was billed at 4 hours. One tech billed 12 FCEs in 1 day—each requesting 4 hours' compensation. King testified that an FCE takes 15 minutes to 2 hours. He was concerned that these exams were being done without doctors' orders and were being billed for more than the time taken. He was one of the employees who reported fraudulent billing to the Department.

Douglas left WME in early 2008. The new medical director who replaced Douglas, Dr. Jerry Franz, noticed that too many FCEs were being performed and that some techs were billing 10 to 12 per day. Franz informed the technicians that they could no longer perform an FCE unless

7

a doctor ordered one, and that they required accurate time keeping for billing. He was one of the employees who reported inappropriate billing to the Department.

Barbara testified that when her father first established the company, WME only did DDE examinations. Eventually, the company began doing FCE exams. When they found out that the cap for FCEs was 4 hours, she and her father decided to charge the maximum. She claimed that they did not intend to defraud Texas Mutual by doing so, even though she conceded that an FCE did not take 4 hours. She identified two letters in which Douglas stated that WME would do an FCE on all patients. She did not explain why the company charged the maximum fee but acknowledged that the work was lucrative; she estimated that charges for FCEs equaled about $1,000,000 in a year.

Douglas testified on his own behalf. When he began performing FCEs, he stated that he called other doctors' offices about how to bill, although he did not offer any other doctor to testify on FCE billing. He also claimed to have called the Department, although its records did not reflect an inquiry regarding FCEs, only DDEs.

Douglas disputed the amount his business should be entitled to legally bill for an FCE. He insisted that, despite the State's construction of the rules, WME could bill for all the time a doctor or agent spent on a patient's matter, in addition to time with the patient, including arranging for the appointment and travel, preparing for the exam, obtaining records, reviewing records in advance, working on the patient's file, and preparing a report after the exam. He personally did a time study to determine how long these matters required and concluded that, on average, the whole process took 4.5 to 5.5 hours, sometimes over a 2-week period or so. Based on his own conclusion about the average time required, he made the decision to bill the maximum 4 hours on every FCE

8

without regard to actual time each required; the billing form reflected that the 4 hours was on 1 day. He confirmed that it was his decision for WME to bill 4 hours on every FCE.

Because in his view an FCE required advance preparation and review of the patient's records, he believed that he could bill this time. At the same time, he acknowledged that the DDE exam also required arranging for location and travel, obtaining patient's records, and reviewing them in advance, and that this work was properly included in billing for a DDE. He did not distinguish the preparation time relating to a DDE from any time related to an FCE or explain whether the same time and work was being billed for both a DDE and an FCE on one patient. He also could not explain why work was required in advance of an FCE, in light of the fact that there was no way to know whether a doctor would request an FCE until the DDE examination itself, other than to say that the preparation was performed in case the doctor requested one.

Douglas denied telling the technicians to perform an FCE on every patient; he did not remember signing letters to the contrary on his letterhead that were in evidence, and he denied that it was his signature on the letters. Apart from the letters, however, he acknowledged that WME began doing an FCE on almost every patient in anticipation that the doctor might want one. He stated that the company did not charge for the ones the doctor did not want, but he admitted that they could have charged for these also, as he did not work in billing.

The CPT code does not make any reference to arrangements, travel, or pre-examination preparation; Douglas admitted that this time was included in his decision to bill the maximum. Douglas insisted, however, that he was at least entitled to bill for preparing a written post-exam report concerning the FCE because a report was mentioned in the code description.

9

He denied an intent to defraud Texas Mutual, but a large portion of his testimony was spent contradicting the State and justifying the billing method utilized. He never denied that every FCE performed was billed at the maximum four hours. He implied that his billing practice was a mistake because he believed that he was justified in billing as WME did; at the same time, he insisted that the billing method was reasonable and proper and denied that the billing procedure violated the medical fee guidelines. He did not contend that he was operating under a mistaken understanding of the rules; instead, he insisted that the State's construction was incorrect, he disagreed with it, and his construction was correct.

Douglas offered the testimony of Konrad Kuenstler, an attorney and physical therapist who has performed over 1,000 FCEs. Kuenstler testified that doctors can bill for the time spent on medical review and written reports. Kuenstler worked in Texas until about 2009 but practiced law in California at the time of trial.

Douglas argues that the evidence failed to prove that he: (1) acted with intent to defraud or harm Texas Mutual because the State failed to adduce evidence that he personally sent inflated invoices to Texas Mutual or authorized WME to bill for unauthorized fees; (2) engaged in any deception with respect to the bills sent to Texas Mutual; or (3) caused the forms HCFA 1500 to be submitted to Texas Mutual for payment. We disagree. He also argues that the State was required to prove that but for his conduct, Texas Mutual would not have paid the fees it did.

A person acts with intent with respect to his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a). Intent to deceive can be inferred from the accused's acts, words, and conduct. *Goldstein v. State*, 803 S.W.2d 777, 791 (Tex. App.—Dallas 1991, pet. ref'd). A person engages in deception by creating or

10

confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true. Tex. Penal Code § 31.01(1)(A).

Douglas was the medical director for WME. Although Barbara was the president, it was not shown that she had any medical training. Our review of the evidence reveals that Douglas, as the owner and medical director of the company, acting alone or in concert with Barbara, established WME's policy for submitting its bills to Texas Mutual, that he determined that it should submit four hours on every FCE, regardless of the actual time required, that he knew that WME was submitting bills for time not spent with the patient, and that he knew this was done for the purpose of causing Texas Mutual to pay fees based upon the forms submitted.

Douglas also argues that Barbara was clearly an accomplice witness as a matter of law, whose testimony was uncorroborated and thus must be excluded, leaving no legally sufficient evidence to support the verdict. Again, we must disagree. Even assuming that Barbara should be considered an accomplice, her testimony was corroborated by employees who worked at WME, by patients, and by Douglas himself. Nothing in her testimony contradicted his version of facts, except the two letters she identified on his letterhead. These letters, however, were written to designated doctors, explaining the benefit of FCEs for their examination and the reason that WME intended to perform an FCE on most patients in the future, a fact that Douglas himself confirmed. Like Douglas, Barbara testified that neither she, WME, nor Douglas acted with intent to defraud or deceive Texas Mutual.

Finally, Douglas insists that the evidence is legally insufficient to prove the jurisdictional amount required to classify the offense as a third degree felony because with respect

11

to each payment Texas Mutual made, the State failed to segregate the portion paid for services actually rendered from the amount the State alleged was fraudulently billed. For the same reason, he contends, the evidence does not support the amount of restitution he is ordered to pay.

The evidence showed that Texas Mutual was defrauded into paying WME based upon falsified form requests. The fact that WME may have been entitled to partial payment for work actually done had it filed correctly does not defeat the fact that the requests for payment it did file were untrue. Each form was incorrect because each contained false information. The State was not required to determine and then segregate the false amount from the amount that might be deemed legitimate had WME filed legally. Thus, the evidence proves that the pecuniary value of the property Texas Mutual transferred was within the range of a third degree felony and based upon the evidence restitution was properly ordered. Further, because Douglas did not object to the amount of restitution ordered by the trial court, such complaint is waived. *See Gutierrez-Rodriguez v. State*, 444 S.W.3d 21, 23-24 (Tex. Crim. App. 2014).

**Ineffective assistance of counsel**

Douglas served as the corporate representative for WME at trial, although WME was treated almost as an afterthought at trial, since it was no longer in business. Douglas has new counsel on appeal who did not serve as trial counsel. He contends that his trial counsel rendered him ineffective assistance because counsel allowed the State to consolidate Douglas's case with that of the corporation WME, allowed the State to consolidate without a formal motion for consolidation, failed to request a severance from WME, and failed to request an instruction on mistake of fact or due diligence of a corporation. The charge submitted to the jury was identical as to both Douglas

12

and WME and was submitted in a single charge but the jury was instructed that Douglas and WME were subject to decision separately and that the jury could decide the same or different verdicts for each. Douglas did not object at trial to the joint trial or to the jury charge.

A defendant who claims he is entitled to a reversal of his conviction because his counsel rendered ineffective assistance must show that his counsel's representation failed to meet a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). An appellant must show by a preponderance of the evidence that (1) his counsel's representation was deficient and fell below an objective standard of reasonableness, and (2) the deficient representation caused him prejudice, in that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to make a showing under either prong of the *Strickland* test defeats the claim. *Andrews*, 159 S.W.3d at 101; *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

The appellate court considers the totality of the evidence to determine whether, but for counsel's errors, the jury would have had a reasonable doubt concerning the defendant's guilt. *Strickland*, 466 U.S. at 694-95; *see Hernandez*, 726 S.W.2d at 56-57.

Allegations of ineffective counsel must be firmly founded in the record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Our review of counsel's performance must be highly deferential. *Andrews*, 159 S.W.3d at 101. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome that presumption. *Strickland*, 466 U.S. at 688-89. A claimant must generally prove

13

deficiency using affirmative evidence in the trial record sufficient to overcome the presumption. *See id*. at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

To prove prejudice, a claimant must establish a "reasonable probability" that the result of the proceeding would have been different if counsel had not been deficient. *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id*. Whether there is a reasonable probability that confidence in the outcome of the trial is undermined can turn on evidence adduced at trial because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696.

Trial counsel should be afforded an opportunity to explain his actions. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Under normal circumstances, therefore, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's representation was reasonable and professional. *Id*. at 833; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A record on ineffective assistance is best developed in an evidentiary hearing on a motion for new trial or application for writ of habeas corpus. *Rylander*, 101 S.W.3d at 110.

The Texas Court of Criminal Appeals has stated that a motion for new trial is not required in order to raise ineffective assistance of counsel on appeal, partly because of the time limit on filing a motion and because of the awkward situation of expecting trial counsel to challenge his or her own legal assistance. *Robinson v. State*, 16 S.W.3d 808, 809-11 (Tex. Crim. App. 2000) (holding failure to file motion for new trial does not procedurally prohibit appellate claim of ineffective assistance of counsel). In this instance, however, Douglas retained appellate counsel

14

who timely filed a motion for new trial with the trial court. In his motion, he alleged ineffective assistance of counsel at trial; however, the basis for the complaint was different at trial than he now urges on appeal. Douglas did not complain below that his trial counsel was ineffective because the two causes were tried together, that this procedure was undertaken without a formal motion, or that trial counsel failed to request a severance. Further, appellate counsel did not complain that trial counsel failed to request an instruction on mistake of fact or due diligence of a corporation. No hearing was held on the motion for new trial.

We believe that in this instance we could hold that Douglas waived this issue by not raising it below. However, assuming that it is not waived, based upon this record, and applying the correct legal review, we cannot say that Douglas has shown that trial counsel rendered him ineffective assistance. *See, e.g.*, *Okonkwo v. State*, 398 S.W.3d 689, 696 (Tex. Crim. App. 2013) (rejecting appellant's argument that his counsel was ineffective in failing to request instruction on mistake of fact because that instruction would have required jury to determine whether appellant's mistaken belief was reasonable and would have allowed for conviction on lessened burden of proof if jury concluded that his mistake was unreasonable); *Burton v. State*, No. 14-06-00022-CR, 2007 Tex. App. LEXIS 5000, at *6 (Tex. App.—Houston [14th Dist.] June 28, 2007, no pet.) (not designated for publication) (mem. op.) (concluding that appellant did not overcome presumption that his counsel's failure to seek accomplice or co-conspirator instruction was sound trial strategy because record was silent as to trial counsel's reasons for that decision); *Woods v. State*, 998 S.W.2d 633, 635 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (concluding that appellant did not overcome presumption that his counsel's failure to seek severance was sound trial strategy because record was silent as to trial counsel's reasons for that decision); *see also* Tex. Penal Code § 7.24 cmt.

15

(West 1974) (noting that due diligence defense for corporation does not apply to felony prosecutions); 6 Michael B. Charlton, *Texas Practice Series: Texas Criminal Law* § 5.7 (2d ed. 2001) (same).

## CONCLUSION

We hold that there is legally sufficient evidence to support the verdict and that Douglas has failed to show on this record that his trial counsel rendered him ineffective assistance of counsel.

We overrule the issues on appeal and affirm the judgment.

_____

Marilyn Aboussie, Justice

Before Chief Justice Rose, Justices Bourland and Aboussie*

Affirmed

Filed:   August 26, 2015

Do Not Publish

* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

16