

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00116-CR

**AMADEO RAMIDEZ CASTILLEJA, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 82nd District Court**
**Falls County, Texas**
**Trial Court No. 10096**

## MEMORANDUM  OPINION

The jury convicted Amadeo Ramidez Castilleja, Jr., Appellant, of the offense of continuous sexual abuse of a young child and assessed his punishment at confinement for twenty-five years.  The trial court sentenced him accordingly.  We affirm.

Appellant presents four issues on appeal.  First, Appellant maintains that the trial court abused its discretion when it admitted the testimony of an expert witness called by the State.  In his second issue on appeal, Appellant contends that the trial court failed to

properly instruct the jury on the culpable mental states that apply in this case. Next, Appellant asserts that when the trial court charged the jury in the abstract, it erroneously commented on the evidence. Finally, in Appellant's fourth issue on appeal, Appellant argues that the evidence was factually insufficient to support the verdict.

We will first take up Appellant's complaint that the evidence is factually insufficient to support the verdict. Appellant does not contend that the evidence is legally insufficient to support the verdict.

Appellant essentially invites this court to decline to follow precedent from the Texas Court of Criminal Appeals in matters involving sufficiency of the evidence. We have declined that invitation before, and we decline it again. *See e.g., Zahirniak v.* State, No. 10-16-00336-CR, 2019 WL 1837340, at *3 (Waco April 24, 2019, pet. ref'd (memorandum op., not designated for publication) (citing *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App. 2010); *Baker v. State*, No. 10-10-00049-CR, 2019 WL 2242571, at *5 (Waco June 8, 2011, pet. ref'd) (mem. op., not designated for publication). This court noted in *Baker*, that, although the opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) was a plurality, "the Court of Criminal Appeals has since affirmed the elimination of factual sufficiency review with an outright majority. *See Howard v. State*, 333 S.W.3d 137 (Tex. Crim. App .2011) (unanimous op.) ("we have abolished factual-sufficiency review"); *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App. 2010)

(Meyers, J. dissented); *Wirth v. State*, 327 S.W.3d 164, 165 (Tex. Crim. App. 2010) (Meyers, J. dissented)." *Id.*

When we evaluate the sufficiency of the evidence, we view all the evidence in a light most favorable to the verdict and determine whether any rational finder of fact could have found the existence of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Liverman v. State*, 470 S.W.3d 831, 835-36 (Tex. Crim. App. 2015). The appellate court's duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether it believes the evidence established the elements in question beyond a reasonable doubt. *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988). The sufficiency test must be applied to the application paragraph in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Viewed in the light most favorable to the verdict, the evidence shows that J.C. was born on January 31, 2005. J.C.'s mother, Jessica, and her father, Mark, were living together at the time that J.C. was conceived. After J.C. was born, Mark and Jessica had an "on-and-off" relationship and they ultimately married other people.

Appellant is Mark's father; Stella is Mark's mother. When J.C. was younger, she spent a good bit of time with them, including overnight visits. J.C. called Appellant "Po-Po" and she called Stella "Mi-Mi."

J.C. testified that when she was about five or six, her Po-Po began to touch her inappropriately. He continued to sexually assault her until January 2016 when she was about eleven years old and had begun her menstrual cycle.

J.C. testified about the first assault that she remembers. Again, she was about five or six years of age. She was sitting on a couch in the living room at Appellant's house. Appellant came over to the couch and sat her on his lap. He took his penis out of his pants, put her hand on it, and "guided my hand up and down." J.C. testified that she did not look at Appellant because she was afraid.

J.C. told the jury that after that first time, the assaults continued until she was eleven. During that time, Appellant touched her breasts, made her wrap her hand around his penis while he "guided" her hand up and down, put his hand in her pants, penetrated her vaginal cavity with his finger, forced her to perform oral sex on him, and he performed oral sex on her. J.C. testified that Appellant never penetrated her vagina with his penis. She recalls only two times that she saw a "white substance" come out of Appellant's penis. All the assaults occurred in Appellant's house when J.C.'s Mi-Mi was gone for a morning walk or when she was otherwise absent. The assaults happened many, many times, "possibly too many times to count."

In addition to her testimony about the first time that Appellant assaulted her, J.C. also testified about the last time that Appellant assaulted her. Appellant touched her breast area and he touched her under her clothing as he had earlier that day. J.C. told

Appellant, "You can't do this to me forever." Appellant replied, "I can as long as I can keep you from telling. Yes, I can." Appellant had threatened to hurt her or somebody if she told anyone what was happening. Nonetheless, at this point, J.C. told him, "No. Stop. You can't do this to me." Appellant again said, "Yes, I can." But the assaults stopped.

J.C.'s mother, Jessica, testified that J.C. had begun seeing counselors when she was around six or seven years old. J.C. was "not very much available." She did not want to talk about things that were bothering her.

In 2016, J.C. received counseling services because she was exhibiting bad hygiene, did not want to wear make-up and dresses like the other girls, was reclusive, and had been the subject of bullying. Additionally, J.C. had threatened to hurt herself.

On January 6, 2017, J.C.'s father, Mark, died in a one-vehicle accident. J.C. and Mark had a close relationship and J.C. "was devasted." The abuse had stopped by the time that Mark died.

Jessica testified that in May 2017, some four months after Mark died, J.C., for the first time, told her that Appellant had been assaulting her. J.C. told her mom about the details of the assaults. This was the first time that J.C. had discussed the details of the assaults with anyone. J.C. testified about the same incident: "[a]nd I felt like once [my dad] got to heaven and, you know, saw what was really going on, he told me, you know, just put it in my heart, like, it was time, because this had been going on for too long … [i]t was just too heavy on my heart."

Because J.C. was afraid that Appellant would hurt someone if she told, and, because she was afraid that she would have to talk to someone about the assaults and go to court, she never mentioned the assaults to any of her counselors. J.C. never recanted the allegations of sexual abuse that she had made against Appellant.

As we have noted, Appellant makes no claim that the evidence is legally insufficient to support his conviction. Therefore, he concedes that the evidence is sufficient under the *Jackson* standard of review. *See, e.g., Sanders v. State*, No. 10-14-00211-CR, 2015 WL 2170229, at *1 (Tex. App.—Waco May 7, 2015, pet. ref'd) (mem. op., not designated for publication) ("By asking this Court to only review the factual sufficiency of the evidence, Sanders concedes the evidence is sufficient under the *Jackson* standard of review.").

Even if we were to examine the evidence under *Jackson*, we would hold that the evidence that we have outlined is sufficient. The testimony of a child victim is alone sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. ANN., article 38.07(a)(West). Further, J.C. testified as to what happened to her and she had repeated, without retraction, those same events to her mother, to a forensic interviewer, and to a physician who physically examined her. Any rational finder of fact could have found the existence of the elements of the offense beyond a reasonable doubt. We overrule Appellant's fourth issue on appeal.

In his first issue on appeal, Appellant asserts that the trial court abused its discretion when it admitted the testimony of Dr. William Lee Carter, an expert witness called by the State. Dr. Carter is a psychologist. When the State called Dr. Carter as an expert witness, Appellant asked the trial court for a Rule 705 hearing. *See* TEX. R. EVID. 705. The trial court conducted the Rule 705 hearing outside the presence of the jury.

At the conclusion of the Rule 705 hearing, Appellant's counsel objected that Dr. Carter's testimony would simply point out "commonalities that won't necessarily apply to any specific person." Counsel continued, "It certainly does not pass the Frye test or Daubert test. And we would ask that he not be allowed to testify, and certainly not as an expert, in front of the jury." Appellant did not object to Dr. Carter's qualifications and neither did he object upon any other grounds.

On appeal, Appellant argues that Dr. Carter's testimony was not relevant because "his testimony did not make any fact of consequence more or less probable." The State takes the position that because Appellant did not object on relevance grounds in the trial court, Appellant's argument on appeal does not comport with the objection levelled in the trial court and Appellant has waived his complaint.

Even if Appellant has not waived the complaint, we would not find that the trial court abused its discretion when it allowed Dr. Carter to testify.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App.

2012). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). The trial court abuses its discretion when its decision lies "outside the zone of reasonable disagreement." *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016) (quoting *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

Rule 401 of the Texas Rules of Evidence provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. However, Rule 702 of the Texas Rules of Evidence, provides that an expert witness may "testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence* or to determine a fact in issue." TEX. R. EVID. 702 (emphasis added).

During the Rule 705 hearing, Dr. Carter testified that he would not "offer opinions about the truthfulness of the child's testimony. What I will offer is information about how experts like myself analyze and break down a child sex abuse case, given the complex nature of those kinds of offenses." He further testified that he would "offer information that hopefully will help the jury better understand the facts before them, so that when they are in their deliberations, they will be better informed."

As we view Dr. Carter's testimony before the jury, that is exactly the type of information that he provided and that is provided for in Rule 702. Dr. Carter testified as

to the dynamics and effects of the victim/perpetrator relationship, the characterization of sexual perpetrators and victims, a perpetrator's selection of a victim, and among other things, reasons for delayed outcries. It appears to us that Dr. Carter's testimony would *"help the trier of fact to understand the evidence."* The trial court did not abuse its discretion when it admitted Dr. Carter's expert testimony. We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant asserts that the trial court erred when it failed to properly instruct the jury on the culpable mental states applicable to the offense. Even if that is so, Appellant did not object to the jury charge and must now show that he was egregiously harmed by the trial court's error. When an appellant fails to object or to present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); see *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

"To be reversible, any unpreserved jury-charge error must result in egregious harm which affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (citations omitted) (internal quotation marks omitted). A defendant must have suffered more than theoretical harm, the harm must be actual. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Egregious harm is shown when the error "created such

harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171.

In *Almanza*, the Court of Criminal Appeals outlined four factors that reviewing courts should consider when determining whether a jury-charge error resulted in egregious harm: "1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Olivas*, 202 S.W.3d at 144.

As far as the charge itself is concerned, in the abstract portion of the jury charge, the trial court instructed the jury that a person commits the offense if the person "intentionally or knowingly . . . causes the penetration of the sexual organ of a child under the age of 14 by the actor's finger." But section 22.021(a)(1)(B)(i) of the Texas Penal Code defines the offense of aggravated sexual assault, in relevant part, as "caus[ing] the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West). The application paragraph accurately tracked the charge in the indictment.

The application paragraph is the paragraph in a jury charge that authorizes a conviction. *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). Further, the definition in the abstract paragraph of the jury charge made the State's proof even more restrictive than the provisions of the statute. In the application paragraph, the trial court

limited the jury's consideration of means of penetration to that alleged in the indictment. *See Thompson v. State*, 12 S.W.3d 915, 921 (Tex. App.—Beaumont 2000, pet. ref'd). A consideration of the jury charge militates against a finding of egregious harm.

When we review the state of the evidence and contested issues, we note that Appellant's culpable mental state was never a contested issue. Appellant's defense was focused upon his claim that J.C. fabricated the whole story. There was no claim of accidental touching during a bath or anything of that nature; his defense was that the acts of sexual assault simply never happened.

To the contrary, J.C. testified to the sexual assaults committed against her by Appellant. Those allegations were substantiated by other witnesses who testified. Furthermore, the evidence shows that J.C. never recanted her accusations.

This court faced a similar complaint in *Reed.* There, Appellant's defense was that the child victim had fabricated the outcry and that the sexual assaults never occurred; the focus was on the credibility of the child victim. There was no contested issue other than the credibility of the child victim. The court held that even if error existed, it could not conclude that any such error resulted in egregious harm. *Reed v. State*, 421 S.W.3d 24 (Tex. App.—Waco 2013, pet. ref'd).

This factor militates against a finding that Appellant suffered egregious harm.

Neither the State nor Appellant presented *mens rea* arguments in the trial court. Therefore, an examination of the third category of inquiry as to egregious harm has a neutral effect upon our assessment of egregious harm.

We have searched the record for any other relevant information revealed by the record that would show how Appellant was egregiously harmed and have found none.[1]

On this record we are not able to say that Appellant suffered egregious harm from the jury charge error, if there was such error. We overrule Appellant's second issue on appeal.

Appellant, in his third issue on appeal, maintains that the trial court improperly commented on the evidence in the abstract portion of the jury charge. We believe it would be advantageous to repeat a portion of our discussion of Appellant's second issue on appeal.

As we have said, Section 22.021(a)(1)(B)(i) of the Texas Penal Code defines the offense of aggravated sexual assault, in relevant part, as "caus[ing] the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West). However, in the abstract portion of the jury charge, the trial court instructed the jury that a person commits the offense if the person "intentionally or knowingly ... causes

---

[1] In his brief, Appellant refers to the fact that the jury remained hopelessly deadlocked for a time and was able to reach a verdict only after the trial court gave the jury an *Allen* charge. Then, Appellant argues, in a very little time, the jury returned with an assessment of the minimum punishment. This, Appellant posits, suggests a compromise verdict and weighs in favor of a finding of egregious harm. We disagree. While such a suggestion may seem apparent, there is no evidence in the record to support it.

the penetration of the sexual organ of a child under the age of 14 by the actor's finger." Appellant maintains that when the trial court specifically referred to penetration by Appellant's finger in the abstract portion of the jury charge, it commented on the evidence and caused him egregious harm.

The application paragraph of the jury charge is the part of the charge that authorizes a conviction, not the abstract portion of the charge. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). The abstract parts of the charge merely serve as a glossary to aid the jury in their understanding and meaning of concepts and terms contained in the application paragraph. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (citing *Plata v. State,* 926 S.W.2d 300, 302 (Tex.Crim.App.1996), *overruled on other grounds* by *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). As a general proposition, "reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466.

As we have indicated, in the application portion of the jury charge as relates to this issue, the trial court asked the jury to find whether Appellant intentionally and knowingly caused the "penetration of the sexual organ of J.C., a child who was then and there younger than 14 years of age, by his finger ..." "Where the application paragraph

correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

Even if we were to analyze Appellant's complaint under *Almanza*, we would not find that Appellant suffered egregious harm. We have outlined the appropriate test above and see no need to repeat it here.

When we consider the charge itself, in its charge in the abstract, the trial court limited the State to the manner and means that was charged in the indictment and that was contained in the application paragraph. The statement in the abstract portion of the charge did not contain "an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466. A consideration of this factor militates against a finding that Appellant suffered egregious harm.

We have already discussed the state of the evidence in connection with Appellant's second issue on appeal. We need not repeat that evidence here. We do note again, though, that the method of penetration was never a contested issue. Rather, Appellant denied that abuse of any kind occurred. A consideration of this factor militates against a finding that Appellant suffered egregious harm.

Appellant claims that because the State argued to the jury that Appellant penetrated J.C.'s vagina with his finger, that somehow shows that he suffered egregious harm. The State was entirely within its right to make that argument—that is the basis of

its accusation against Appellant. This factor does not weigh in favor of a finding that Appellant suffered egregious harm.

As with Appellant's second issue on appeal, he asserts that the jury must have reached a compromise verdict. For the reasons stated in our discussion of the second issue on appeal, we do not believe that weighs in favor of a finding that Appellant suffered egregious harm. Finally, we have searched the record and have found nothing to support a finding that Appellant suffered egregious harm.

Even if we were to hold, which we do not, that the trial court erroneously commented on the evidence when it charged the jury in the abstract, Appellant did not suffer egregious harm therefrom. We overrule Appellant's third issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Wright[2]
Affirmed
Opinion delivered and filed August 4, 2021
Do not publish
[CRPM]



---

[2] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.