

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1595-14, PD-1596-14

### ROGER LIVERMAN AND AARON LIVERMAN, Appellants

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, ALCALA, RICHARDSON, YEARY and NEWELL, JJ., joined. JOHNSON, J., concurred. MEYERS, J., dissented.

We must determine whether a person commits the crime of securing the execution of documents by deception when he files a false mechanic's lien affidavit with the county clerk. We conclude that such a person does not commit that crime because he does not cause "another" to "execute" a document affecting property or pecuniary interests.

## I. BACKGROUND

### A. Facts and Trial

Appellants filed mechanic's lien affidavits in the Denton County Clerk's Office. These

affidavits alleged that appellants had performed "labor and/or materials" worth a certain amount of money[1] on the home of Katheryn Payne. As a result of these filings, the State charged appellants with securing the execution of documents by deception. The indictments alleged that appellants caused Cynthia Mitchell, the county clerk, to sign or execute the mechanic's lien affidavits. Appellants were convicted, fined, and placed on community supervision.[2]

### B. Appeal

The court of appeals reversed appellants' convictions and rendered judgments of acquittal.[3] The court held that the evidence was legally insufficient to support the convictions because "the conduct of the court clerk filing and recording" the mechanic's lien affidavit in each case "was not the signing or executing of a document as contemplated by subsection 32.46(a)(1)."[4] In arriving at this conclusion, the court of appeals held that it need look no further than the two subsections of Penal Code § 32.46.[5] The court observed that subsection (a)(1) uses the verbs "sign and execute" while subsection (a)(2) uses the verbs "file and record."[6] Presuming that the legislature intends

---

[1] Roger Liverman alleged the amount of $45,000 while Aaron Liverman alleged the amount of $12,000.

[2] Roger Liverman was fined $5,000 and placed on community supervision for ten years. Aaron Liverman was fined $500 and placed on community supervision for two years.

[3] *Liverman v. State*, 448 S.W.3d 155, 159 (Tex. App.–Fort Worth 2014) (Roger Liverman's case); *Liverman v. State*, No. 02-13-00177-CR, 2014 Tex. App. LEXIS 11249, *8 (October 9, 2014) (not designated for publication) (Aaron Liverman's case). Because the reasoning in the opinions is virtually identical, we will hereinafter cite only to the published opinion in Roger Liverman's case.

[4] *Liverman*, 448 S.W.3d at 158.

[5] *Id.*

[6] *Id.*

different meanings when it uses different language in different parts of the statute, the court concluded that the acts of signing and executing must not include the acts of filing and recording.[7] The court of appeals also rejected the State's argument that the clerk's act of signing a cover sheet constituted a sufficient signature to invoke the statute because the appellants were not charged by their indictments with having caused the clerk to sign or execute a cover sheet.[8]

### C. Parties' Arguments

On discretionary review, the State contends that a clerk's actions of filing and recording a lien equate to "signing or executing" under § 32.46(a)(1) and that the legislature intended to criminalize such activity under that provision.[9] The State argues that "execute" must mean something different or broader than "sign" because "execute" was included in the statute for a reason. The State further argues that the use of the verbs "file and record" in § 32.46(a)(2) does not preclude giving overlapping meaning to the verb "execute" in § 32.46(a)(1) because of other significant differences between the two subsections: The State observes that subsection (a)(1) applies broadly to any document that is executed while subsection (a)(2) applies only to a narrow situation involving documents from fake courts. And the State observes that conduct under subsection (a)(2) is subject to only a single punishment while conduct under subsection (a)(1) is subject to a sliding-scale punishment scheme.

---

[7] *Id.*

[8] *Id.* at 158-59.

[9] The State's questions for review are: (1) "Was it the Legislature's intent under Texas Penal Code section 32.46(a)(1) to criminalize the act of causing a court clerk to file and record a fraudulent lien?" and (2) "Does a clerk's actions of filing and recording a lien equate to 'signing or executing' under Texas Penal Code section 32.46(a)(1)?"

The State also argues that "execute" means "to put completely into effect" or "to perform what is required to give validity to." Under this definition, the State contends, the clerk executed the mechanic's lien affidavits, as contemplated by subsection (a)(1), by filing and recording them, because those acts were necessary to put the liens into effect towards subsequent purchasers. By contrast, the State contends, documents from fake courts, covered by subsection (a)(2), can never be executed because they cannot be legally put into effect. So, the State reasons, the verbs "file" and "record" were included in subsection (a)(2) because some verb other than "execute" was needed, but this does not preclude "execute" from encompassing the acts of filing and recording in an appropriate case.

The State also argues that the legislative history of the 1997 amendments that added subsection (a)(2) reveal an intent to punish people who file fraudulent documents, including liens. And the State argues that the court of appeals's holding leads to an absurd result, because construing the Penal Code to promote justice would entail making the filing of a fraudulent lien a crime, but if appellants' actions of filing false liens are not crimes under § 32.46(a)(1), "there is not another section under which this specific crime would fall." Although a prosecution under Penal Code § 32.49 for failing to release a fraudulent lien might have been viable if the victim had conveyed the requisite notice to appellants and they had refused to release the liens, the State argues that appellants, as the ones who filed the fraudulent liens, should be held criminally responsible regardless of whether the victim asks for a release.

Appellants respond that the county clerk plays no role in making a mechanic's lien valid. Relying upon language in the property code that a clerk's failure to record or index a mechanic's lien does not invalidate it, appellants contend that a lien's validity turns, not on the actions of the clerk,

but on the compliance of the person seeking to perfect it. Appellants further argue that mechanic's liens are self-executing and that "the recording of an affidavit in support of a *claim* of lien is entirely unrelated to its 'finality, validity, or enforceability' because it does not 'change a legal interest from one form to another.'" They further contend that the legislature believed it was necessary to amend § 32.46 to add subsection (a)(2) to criminalize fraudulent filings. Appellants also contend that the "another" who executes the document must be the person deceived and that the person deceived was the property owner (Payne) not the clerk (Mitchell). And appellants contend that § 32.49 provides a way to punish someone who files a false mechanic's lien, assuming its notification requirements are met. They argue that § 32.49, which creates a misdemeanor offense, is the more specific statute and should be construed *in pari materia* with the broader language of § 32.46(a)(1).

## II. ANALYSIS

The usual standard for reviewing the sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt.[10] In some cases, however, a sufficiency-of-the-evidence issue turns on the meaning of the statute under which the defendant has been prosecuted.[11] Does certain conduct actually constitute an offense under the statute with which the defendant has been charged? That question, like all statutory construction

---

[10] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

[11] *Moore v. State*, 371 S.W.3d 221, 227 (Tex. Crim. App. 2012) ("[A]ppellate construction of a statute may be necessary to resolve an evidence-sufficiency complaint when alternative statutory interpretations would yield dissimilar outcomes.").

questions, is a question of law, which we review *de novo*.[12]

In construing a statute, we give effect to the plain meaning of its language, unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended.[13]  In determining plain meaning, we employ the rules of grammar and usage, and we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible.[14]  If a word or a phrase has acquired a technical or particular meaning, we construe the word or phrase accordingly.[15]  If, after using these tools of construction, the language of the statute is ambiguous, we can resort to extratextual factors to determine the statute's meaning.[16]  "Ambiguity exists when the statutory language may be understood by reasonably well-informed persons in two or more different senses."[17]  Extratextual factors include but are not limited to: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and

---

[12]  *See Johnson v. State*, 423 S.W.3d 385, 394 (Tex. Crim. App. 2014) ("Statutory construction is a question of law, which we review de novo.").

[13]  *Yazdchi v. State*, 428 S.W.3d 831, 837-38 (Tex. Crim. App. 2014); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[14]  *Yazdchi*, 428 S.W.3d at 837.

[15]  *Id.*

[16]  *Id.* at 838.

[17]  *Id.*

emergency provision.[18]

The statute under which appellants were charged—§ 32.46(a)(1)—provides:

(a) A person commits an offense if, with intent to defraud or harm any person, he, by deception:

(1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person.[19]

In construing this statute, the court of appeals relied upon § 32.46(a)(2), which provides:

(a) A person commits an offense if, with intent to defraud or harm any person, he, by deception:

* * *

(2) causes or induces a public servant to file or record any purported judgment or other document purporting to memorialize or evidence an act, an order, a directive, or process of:

(A) a purported court that is not expressly created or established under the constitution or the laws of this state or of the United States;

(B) a purported judicial entity that is not expressly created or established under the constitution or laws of this state or of the United States; or

(C) a purported judicial officer of a purported court or purported judicial entity described by Paragraph (A) or (B).[20]

We agree with the State that the court of appeals's reliance upon § 32.46(a)(2) is misplaced, and we also conclude, contrary to various arguments advanced by the parties, that the text and history of that subsection is simply inconclusive with respect to the meaning of the term "execute" in §

---

[18] *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014).

[19] TEX. PENAL CODE § 32.46(a)(1).

[20] *Id.* § 32.46(a)(2).

32.46(a)(1).[21] The court of appeals accurately observed that § 32.46(a)(1) contains the terms "sign" and "execute" while § 32.46(a)(2) contains the different terms "file" and "record," but we agree with the State that the use of different terms in these different subsections does not mean that the terms cannot overlap. And as the State explains, the legislature might have thought that the types of documents at issue in § 32.46(a)(2), being from fake or legally unrecognized courts, were—or at least might be—incapable of being executed. That does not mean that an act of "filing" or "recording" could not, in an appropriate case, also be an act of "executing." Moreover, § 32.46(a)(2) did not exist until it was added in 1997.[22] By contrast, the wording of the provision that is now codified as § 32.46(a)(1) has remained unchanged since it was enacted in 1973.[23] What the legislature thought or intended when it enacted a different subsection in 1997 is not particularly probative of what it enacted in 1973.[24]

And because § 32.49 was enacted in 1997,[25] its existence also carries little weight in construing the meaning of § 32.46(a)(1). Appellants, however, argue that § 32.49 should be

---

[21] We need not decide whether some of the arguments advanced would be part of a plain-meaning analysis, as opposed to a review of extratextual factors because, however the factors are characterized, they are inconclusive. *See Chase v. State*, 448 S.W.3d 6, 22 n.82 (Tex. Crim. App. 2014).

[22] *See* Acts 1997, 75th Leg., ch. 189, § 2.

[23] *See* § 32.46(a) (Vernon 1974); Acts 1973, 63rd Leg., p. 883, ch. 399, § 1.

[24] *See Chase*, 448 S.W.3d at 27 ("What [a legislator] thought about a statute that was not being amended is not controlling, nor, in the present context, even particularly persuasive. It is axiomatic that one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight.") (internal quotation marks omitted).

[25] *See* Acts 1997, 75th Leg., ch. 189, § 4 (enacting TEX. PENAL CODE § 32.49).

construed *in pari materia* with § 32.46(a)(1) and that § 32.49 should prevail in his case as the more specific (and later-enacted) provision. But even when statutes are construed to be *in pari materia*, "any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy."[26] Penal Code § 32.49 creates an offense for a person who, "with intent to defraud or harm another . . . owns or holds or is the beneficiary of a purported lien or claim . . . that is fraudulent" and fails to release the lien after the requisite notice called for in the statute.[27] We agree with the State that this provision can be harmonized with § 32.46(a)(1) by construing § 32.46(a)(1) to apply (as the more serious offense) to a person who creates a false lien and construing § 32.49 to apply (as the less serious offense) to a person who may not have created the false lien but fails to release it after the requisite notice has been provided.

Without the encumbrance of various other statutory provisions cited by the parties, then, we now examine the meaning of the term "execute" found in § 32.46(a)(1). The Texas Supreme Court has defined "execute" as meaning "to perform or complete (a contract or duty) . . . to change (as a legal interest) from one form to another . . . or to make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form."[28] The Supreme Court recognized that this formulation involves several definitions and that the term "execute" does not mean only

---

[26] *Jones v. State*, 396 S.W.3d 558, 561-62 (Tex. Crim. App. 2013).

[27] TEX. PENAL CODE § 32.49(a).

[28] *Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004) (brackets omitted, ellipses in *Mid-Continent*).

"sign."[29]  The observation that "execute" has a broader meaning than "sign" seems especially applicable in a statute  such as § 32.46(a)(1) that includes both the terms "sign" and "execute."  We conclude that the Supreme Court's definition of "execute" as "to bring (a legal document) into its final, legally enforceable form" seems to be the appropriate one in the context of § 32.46(a)(1).[30]

The next question is whether the type of document at issue here is "executed"—brought to its final, legally enforceable form—when it is filed with the county clerk.  To perfect a mechanic's lien under Chapter 53, Subchapter C, of the Property Code, a person must comply with certain requirements.[31]  One of those requirements is that the person file a mechanic's lien affidavit with the county clerk.[32]  It is the mechanic's lien affidavit that is the type of document at issue in this case.  A mechanic's lien affidavit has no legal effect until it is filed.  When it is filed, the affidavit has the legal effect of contributing to the perfection of the mechanic's lien under the Property Code.  So the mechanic's lien affidavit is executed when it is filed.

It is not enough, however, to conclude that filing a mechanic's lien affidavit constitutes the execution of that affidavit.  Under § 32.46(a)(1), the defendant must cause "another" to execute the

---

[29]  *Id.*

[30]  This definition essentially conforms to the definitions advanced by both parties, though the parties arrive at divergent conclusions regarding the result of its application to the present case.

[31]   TEX. PROP. CODE § 53.051 ("To perfect the lien, a person must comply with this subchapter.");  *Valdez v. Diamond Shamrock*, 842 S.W.2d 273, 274-75 (Tex. 1992) (op. on rehearing).

[32]  TEX. PROP. CODE § 53.052(a), (b) (person "claiming" a lien "must file an affidavit with the county clerk of the county in which the property is located");  *Valdez*, 842 S.W.2d at 274 ("Valdez properly perfected his interest under the Code and is entitled to a lien on all of the property cited in his mechanic's lien affidavit.").

document.[33] The final issue, then, is *who* executes the mechanic's lien affidavit when it is filed. The Property Code imposes upon the person "claiming" the lien the obligation to "file" the affidavit.[34] Clearly, then, the person claiming the lien "executes" the affidavit when he files it. Does the county clerk *also* "execute" the affidavit by filing and recording it, as the State contends? We conclude that the answer to that question is "no." The Property Code requires the county clerk to record and index any mechanic's lien affidavit that is filed, but it also provides that the "[f]ailure of the county clerk to properly record or index a filed affidavit does not invalidate the lien."[35] This provision is similar to the general rule applicable to the filing of deeds that a deed is effective against subsequent purchasers upon filing, even if the county clerk neglects to record it.[36] Therefore, the mechanic's lien affidavit becomes legally effective upon filing, and the subsequent recording or indexing by the clerk does not in any way alter the legal effect of the filing.

The remaining question, then, is whether the county clerk's acceptance of the document at the time of filing constitutes execution of the document by the clerk. We conclude that it does not. The Property Code characterizes the filing in question as the person claiming the lien filing the affidavit "with the county clerk."[37] This language in the Property Code describes the county clerk

---

[33] TEX. PENAL CODE § 32.46(a)(1).

[34] TEX. PROP. CODE § 53.052(a), (b).

[35] *Id.* § 53.052(c).

[36] *Throckmorton v. Price*, 28 Tex. 605, 609-10 (1866). *See also* TEX. LOCAL GOV'T CODE § 191.003 ("An instrument filed with a county clerk for recording is considered recorded from the time that the instrument is filed."). A county clerk is subject to financial sanction if he or she fails to record a document as required by law. TEX. PROP. CODE § 11.004(b).

[37] TEX. PROP. CODE § 53.052(a), (b).

as a mere recipient of the filing; the clerk need not have any active involvement in that occurrence. For many courts, electronic filing is now possible, and in those situations the entire transaction of receiving and acknowledging the filing may be handled by machine.[38]  We conclude that it is the filing person, not the clerk, who brings the mechanic's lien affidavit into its final, legally enforceable form.[39]  Because the county clerk does not execute the mechanic's lien affidavit when the affidavit is filed, the appellants did not cause "another" to "execute" the documents at issue in the present case.[40]  Consequently, we agree with the court of appeals that the evidence is legally insufficient to support the conviction, and we affirm its judgment.

Delivered: September 23, 2015
Publish

---

[38]  *See* TEX. GOV'T CODE § 51.804.

[39]  Nothing in this opinion should be interpreted as construing the meaning of the word "file" as it appears in § 32.46(a)(2).

[40]  We disagree with the State that construing § 32.46(a)(1) as not applying to a defendant's filing of a false mechanic's lien affidavit means that no statute applies to that sort of conduct.  The offense of tampering with a governmental record penalizes someone who "knowingly makes a false entry in . . . a governmental record," who "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record," or who "makes, presents, or uses a governmental record with knowledge of its falsity."  TEX. PENAL CODE § 37.10(a)(1), (2), (5); *see also Stringer v. State*, 632 S.W.2d 340, 342 (Tex. Crim. App. 1982) (defendant filed an affidavit with the county clerk that contained false statements regarding property he owned).  A governmental record includes "anything belonging to, received by, or kept by government for information, including a court record."  TEX. PENAL CODE § 37.01(2)(A).  If the offense of tampering with a governmental record is committed "with intent to defraud or harm another," it is a state-jail felony, at least absent other special circumstances outlined in § 37.10.  *Id.* § 37.10(c)(1).