

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00063-CR

KENDRICK CHARLES DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR19-064

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

A Rusk County jury convicted Kendrick Charles Davis of trafficking of persons. *See* TEX. PENAL CODE ANN. § 20A.02 (Supp.). On appeal, Davis claims that (1) the evidence was insufficient to prove he harbored the complainant and (2) testimony from a sexual assault nurse examiner (SANE) violated Davis's Confrontation Clause rights and exceeded the scope of the medical diagnosis exception to the rule against hearsay evidence. *See* TEX. R. EVID. 803(4). Because we find that there was sufficient evidence to prove that Davis harbored the complainant as contemplated by the statute criminalizing trafficking of persons and that Davis failed to preserve his complaints about the SANE's testimony, we affirm the trial court's judgment.[1]

## I.    Background

Law enforcement investigated a report of a woman "scared for her life." At the house, they found Davis, his twelve-year-old son, and three young women. One of the young women was Meagan, the complainant. Meagan testified that she met Davis, they began a relationship, and she moved in with him. Another young woman named Hannah also lived in the house. Davis told Meagan that Hannah was renting a room in the house. After a while though, Meagan discovered Hannah was both Davis's sexual partner and working as a prostitute, with Davis collecting her fees.

Meagan testified that, for the first several weeks or months of her cohabitation with Davis, their relationship was relatively peaceful. But, when she discovered the truth about Hannah's activities, Davis began regularly beating both women. Davis then started forcing

---

[1]After a prior conviction was proved for enhancement purposes, Davis was sentenced to twenty-two years' imprisonment.

Meagan to prostitute herself for his benefit. For several days before law enforcement forcefully entered the home on December 6, Davis had deprived the women of clothing, food, and water.

Susan Camazine, a SANE, conducted an examination on Meagan at the hospital in Henderson. Over Davis's objections, Camazine testified to statements that Meagan made to Camazine while presenting a patient history describing Meagan's relationship with Davis. Her recitation of Meagan's statements in the examination were largely corroborated by Meagan's testimony.

## II.    Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). "Our rigorous review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

3

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).

## III.    Evidence Was Sufficient to Show Meagan Was Harbored

Davis's first point of error argues that the evidence was not sufficient to prove he harbored Meagan as contemplated by the statute criminalizing trafficking of persons. The indictment alleged that Davis "traffic[ked] Meagan . . . by harboring, and through force, fraud, or coercion, namely put [Meagan] in imminent fear of serious bodily injury [and] caused [Meagan] to engage in conduct prohibited by [the] Texas Penal Code," to wit, prostitution. *Cf.* TEX. PENAL CODE ANN. §§ 20A.02, 43.02 (Supp.).

"'Traffic' means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE ANN. § 20A.01(4) (Supp.). The verb "harbor" is not defined in the Texas Penal Code. As a result, we must determine its meaning under the statute. "In construing a statute, we give effect to the plain meaning of its language, unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). "In determining plain meaning, we employ the rules of grammar and usage, and we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Id.* "If, after using these tools of construction, the language of the statute is ambiguous, we can resort to extratextual factors to determine the statute's meaning," including:

> (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.

*Id.* (footnote omitted) (citation omitted).

"When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). Black's Law Dictionary defines "harboring" as "[t]he act of affording lodging, shelter, or refuge to a person, esp. a criminal or illegal alien." *Harboring*, BLACK'S LAW DICTIONARY (11th ed. 2019). A regular dictionary definition of the term is "to give shelter or refuge to"; "to be the

5

home or habitat of"; "to hold esp. persistently in the mind"; or "to take shelter in or as if in a harbor." *Harbor*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006).

We will use the common meaning of "harbor," which we construe as providing shelter or lodging. It was undisputed that Meagan lived with Davis for at least a month. Meagan testified that she moved in with Davis around Halloween in 2018. Meagan's testimony that she engaged in prostitution at Davis's command was also unchallenged. Thus, the evidence established that Davis was harboring Meagan at the time law enforcement raided his house.

Davis agrees that the evidence showed Meagan lived with Davis and they were romantically involved. Still, Davis urges a reading of "harbor" that requires a preclusion of another's ability to leave. Yet, Davis has provided no authority and no alternative definitions in support of his construction of the term. Instead, he cites to the statute criminalizing the harboring of a runaway child. *See* TEX. PENAL CODE ANN. § 25.06. An element of that crime is that the actor "harbors a child" who "has escaped from the custody" of named law enforcement agencies. TEX. PENAL CODE ANN. § 25.06(a)(2). However, that offense is notably different from the trafficking offense. The offense of harboring a runaway child contemplates just that—a child, i.e., one younger than eighteen years of age, who has escaped from lawful custody. We can find no instance in which the harboring described in Section 25.06 would apply to the term "harbor" as used in the trafficking statute.

Davis directs us to testimony from Meagan that, while she did not feel free to leave the home without Davis's consent due to his erratic behavior, threats, and use of violence, she was able to leave the house for a relative's funeral and various errands. But we do not see any reason

6

to graft onto the ordinary meaning of "harbor" the requirements of being "concealed" or that "someone be looking for an individual," as Davis urges. That said, to the extent Davis claims this, Meagan unequivocally testified that she was "harbored and kept against [her] will for days on days."

In *Kelly v. State*, the Waco Court of Appeals addressed a similar situation. *Kelly v. State*, 453 S.W.3d 634 (Tex. App.—Waco 2015, pet. ref'd). Evidence there established that Kelly allowed a young woman to stay at Kelly's home "at times." Kelly also provided the young woman "with necessities like food and clothing when she needed it." *Id.* at 644. "Viewing the evidence in the light most favorable to the verdict," the Waco Court of Appeals found that "the evidence was sufficient to prove that Kelly 'harbored' and thus 'trafficked'" the young woman. *Id.* The court stated that "[t]he most commonly recognized meanings of the word 'harbor' as a verb are 'to give shelter to' and 'to give refuge to.'"[2] As a result, the Waco Court of Appeals rejected Kelly's argument that, because the victim did not live with Kelly, he could not be found to have harbored the child. *Id.*

When we view the totality of the evidence in the light most favorable to the jury's verdict, we "conclude that the evidence was sufficient to prove that [Davis] 'harbored' and thus 'trafficked'" Meagan. *Id.* As a result, we find the evidence legally sufficient to support the jury's finding of guilt.

For these reasons, we overrule Davis's first point of error.

---

[2]Here, the *Kelly* court cited to *Urbanski v. State*, 993 S.W.2d 789, 793 (Tex. App.—Dallas 1989, no pet.), which addressed "harbor" in the context of "providing [a] runaway child with shelter, transportation, or a home." *Kelly*, 453 S.W.3d at 644.

## IV.    Complaints about SANE Testimony

Davis makes two arguments in his second point of error.    First, Davis claims that allowing Camazine to read parts of her report to the jury violated Davis's Confrontation Clause rights.[3]    Davis also argues that Camazine's testimony exceeded the scope of the medical diagnosis exception to the bar on hearsay statements.[4]

### A.    Davis Failed to Preserve Confrontation Clause Argument

At trial, Davis made several arguments about the hearsay nature of the anticipated testimony from Camazine.    At one point, Davis's trial counsel said, "[W]e would have no way to cross-examine her on hearsay statements.    So [the nurse's report] in and of itself is complete hearsay.    It's all based on hearsay comments."    Everything else Davis argued to the trial court claimed the nurse's testimony would exceed the scope of the hearsay exception in Rule 803(4) of the Texas Rules of Evidence regarding statements made in pursuit of medical diagnosis or treatment.    But, "[w]hen a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to

---

[3]*See* U.S. CONST. amend VI.

[4]Rule 803(4) provides,

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> **(4)    *Statements for Purposes of Medical Diagnosis or Treatmen*t.**  A statement that:
>
> (A)    is made for—and is reasonably pertinent to—medical diagnosis or treatment; and
> (B)    describes medical history; past or present symptoms or sensations; their inception; or their general cause.

*See* TEX. R. EVID. 803(4).

preserve error. An objection on hearsay does not preserve error on Confrontation Clause grounds." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (footnote omitted) (citation omitted). As a result, we find that Davis did not preserve his Confrontation Clause claim for review.

**B.      Davis Failed to Preserve Error in the Admission of SANE Testimony**

Davis also claims error in allowing Camazine to read the notes she made when taking Meagan's personal history. Davis argues that parts of this history exceeded the scope of the medical diagnosis exception to the rule against hearsay.

Here, we find that Davis's trial objections were insufficient to preserve any error in the admission of any portion of the personal history. Davis's objections did not specifically point out which portions of Meagan's personal history were objected to as inadmissible. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (citing *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g). "When evidence is admitted[,] a part of which is admissible and a part of which is not, it is incumbent on the party objecting to the admissibility of the evidence to specifically point out what part is inadmissible to preserve the alleged error." *Hernandez v. State*, 599 S.W.2d 614, 616 (Tex. Crim. App. 1980) (Dally, J., dissenting). Although Davis's objection sufficiently stated grounds for the objection, he did not identify the specific portions of the personal history that he objected to. "The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part." *Reyna*, 168 S.W.3d at 178 (quoting *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992)).

9

Moreover, "if evidence is offered and challenged which contains some of each, the trial court may safely admit it or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection." *Id.*

We, therefore, overrule Davis's second point of error.

## V.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    January 25, 2022
Date Decided:    May 12, 2022

Do Not Publish