# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00694-CR

**Forrest Newsom, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY,
NO. 21-03011-1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found Forrest Newsom, Jr. guilty of the Class B misdemeanor of criminal mischief for destruction of property valued at $100 or more but less than $750. *See* Tex. Penal Code § 28.03. The trial court assessed sentence at 120 days in jail pursuant to the parties' agreement. The trial court certified that Newsom had the right to appeal, and Newsom contends that the jury verdict is not supported by legally sufficient evidence that he caused $100 or more worth of pecuniary loss. We will reverse the judgment, modify it to be a conviction for a Class C misdemeanor of criminal mischief, and remand to the trial court for assessment of punishment on that offense.

## BACKGROUND

Newsom's estranged wife (Owner) drove a vehicle purchased by her father in October 2017 for which she cosigned. Owner testified that she lived separately from Newsom by October 9, 2021, when Newsom texted her at 3:49 a.m.: "I'll be at your front door sometime this

morning." He later appeared outside her apartment without invitation and began knocking on her door. She did not answer but called the police. He texted her at 9:29 a.m. as follows:

> If you don't answer the door this morning (now) you will be buying new tires for that Jeep. Not trying to hear it today. All of my shit is at the park except for the bag I have with me. I need you to take me to the Washatopia to do laundry. I have the money just need a ride please.
>
> I'll be a real dick today. If I leave without you opening this door you WILL replace a tire today! Count on it And I don't give a fuck about the hoe ass cops showing up. Fed up with life anyway and having you act like a real fucking bitch.

She then watched through her window as Newsom went to her vehicle, stabbed twice, then walked away. Police arrested Newsom nearby. He admitted popping Owner's vehicle's back driver side tire with a knife.

Owner took photos of the punctured tire that were admitted at trial, put on the spare, and drove to Walmart. There, she replaced the punctured tire and bought a second so that the pair of tires had the same wear. She had replaced these tires in 2020. She paid $97 for each new tire in 2021, plus a $3 tire-pressure-monitoring-system (TPMS) service fee, other fees, and taxes. The cost for one tire plus tax was $105; including fees for TPMS and a valve-stem, the total was $112.50. Owner testified that she did not ask for or receive a valuation of the non-slashed tire that was replaced nor did she receive trade-in credit for it because she kept it as a spare. There was no evidence of the value of any spare that was replaced.

Newsom was charged with criminal mischief for, without the effective consent of the owner, intentionally or knowingly damaging or destroying her tangible property. *See* Tex. Penal Code § 28.03(a)(1). The jury was instructed that the offense was a Class B misdemeanor if the pecuniary loss was $100 or more but less than $750, and was a Class C misdemeanor if the

pecuniary loss was less than $100, and was presented a question on each offense. *See id.* § 28.03(b). The jury was instructed to consider the Class C question only if it found him not guilty of the Class B offense. The jury found Newsom guilty of the Class B offense so did not expressly answer the Class C question.

## APPLICABLE LAW

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hernandez v. State*, 556 S.W.3d 308, 315 (Tex. Crim. App. 2017); *McCall v. State*, 635 S.W.3d 261, 272 (Tex. App.—Austin 2021, pet. ref'd).

When performing this review, we must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id*.; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). On appeal, we must determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

A person commits the offense of criminal mischief by intentionally or knowingly damaging or destroying the owner's tangible property without her effective consent. Tex. Penal Code § 28.03. Though the charge included alternate methods of commission—destruction or

3

damage, *see id.* §28.03(a)(1)—the facts of this case focus on destruction. The State proved only that the victim replaced the tire, and replacement cost is an alternate method of measuring the pecuniary loss for destroyed property. *See id.* § 28.06(a). By contrast, the measure of the pecuniary loss for damaged property is the cost of repairing or restoring the damaged property. *See id.* § 28.06(a). There is no evidence in the record of the cost to repair or restore the slashed tire.

The amount of pecuniary loss to the owner determines the basis for the offense level. *Id.* § 28.03(b); *Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014). For destructive mischief, the amount of pecuniary loss is the fair market value of the destroyed property at the time and place of the destruction, Tex. Penal Code § 28.06(a)(1); if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the destruction is an alternative measure of the amount of pecuniary loss. *Id.* § 28.06(a)(2).

**DISCUSSION**

On appeal, Newsom argues that the record lacks legally sufficient evidence to support a finding that his destruction of the tire inflicted at least $100 of pecuniary loss on Owner.

The State offered Owner's testimony and the receipts for the tires purchased after the slashing. But replacement value can be used to show pecuniary loss of destroyed property only if evidence shows that the fair market value of the property cannot be ascertained. *See* Tex. Penal Code § 28.06(a)(2); *Deas v. State*, 752 S.W.2d 573, 575 (Tex. Crim. App. 1988).[1] In *Deas*, the complainant stated that a destroyed garage door had a fair market value of $590 at the time of the

---

[1] The San Antonio Court of Appeals explained that the requirement to assess fair market value of the destroyed item guards against the use of inflated replacement-cost testimony. *Moreno v. State*, 961 S.W.2d 512, 515 (Tex. App.—San Antonio 1997, pet. ref'd). The *Moreno* court noted that four used tires could have a fair market value of less than fifty dollars (Class C misdemeanor), but might take $1500 to replace (state-jail felony). *Id.* at 515.

incident; but on cross-examination, the complainant testified that he based his opinion solely on what he had paid to replace the door and did not know the fair market value of the destroyed door. 752 S.W.2d at 575-76. The *Deas* court cited *Phillips v. State*, an appeal from a criminal-mischief conviction for destruction of tires on a police vehicle by cutting them. 672 S.W.2d 885, 886-87 (Tex. App.—Dallas 2000, no pet.). In reversing and acquitting, the Dallas court held:

> Although the prosecutor asked both witnesses if they were familiar with the fair market value of the tires, neither witness testified as to fair market value but only as to replacement cost. Nor did either witness testify that the fair market value could not be ascertained. Therefore, replacement cost can not be considered as evidence of pecuniary loss.

*Id.* at 887. There is no indication that the trial court in *Phillips* instructed the jury on lesser-included offenses.

Replacement cost and fair market value cannot be presumed identical because that would render meaningless the express condition that replacement cost can establish the pecuniary loss only if the fair market value of the property cannot be ascertained. *See* Tex. Penal Code § 28.06(a)(2). When interpreting a statute, "we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015); *cf. Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022).

Here, Owner did not expressly deny knowing the fair market value of the destroyed tire, but she did testify that she did not receive a valuation of the replaced tires from the store; the only tire value admitted is the replacement cost. But because there is no evidence in the record that the fair market value of the destroyed tire could not have been ascertained, the value of the replacement tire is not the authorized measure of pecuniary loss. *See Deas*, 752 S.W.2d at 575-76;

5

*see also* Tex. Penal Code § 28.06(a)(2); *Lackey v. State*, 290 S.W.3d 912, 919 (Tex. App.—Texarkana 2009, pet. ref'd).

The limitation of Owner's testimony to replacement cost renders inapposite this Court's statement that an "owner may testify regarding the purchase price or replacement cost and is presumed to be testifying regarding an assessment of the fair-market value." *Wearren v. State*, No. 03-15-00445-CR, 2016 WL 3918125, at *2 (Tex. App.—Austin July 13, 2016, no pet.) (mem. op., not designated for publication) (construing theft statute with scheme for assessing pecuniary loss similar to criminal mischief statute) (citing *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986)). The owner in *Wearren* testified that he did not know whether fence panels that were stolen from him were new or used, but that he would have charged a friend $3,000 for the work he performed in exchange for the later-stolen panels; this Court held that evidence sufficient to support a verdict that the fair-market value of the panels was at least $1,500. *Id.* at *3. In *Sullivan*, the owner testified in response to questions about the "market value" of the weapon on the date it was stolen, not its replacement cost, even though the owner was not a market expert. 701 S.W.2d at 907. An owner's testimony that used tools were worth about half the purchase price was accepted as evidence establishing the fair market value of the tools. *Id.* (citing *Coronado v. State*, 508 SW.2d 373, 374 (Tex. Crim. App. 1974)). Based on the evidence in this case that the value testified about was replacement cost and not the fair market value, the presumption discussed in *Wearren* does not apply here. As discussed above, the Court of Criminal Appeals in *Deas* clarified that testimony about the replacement value of a destroyed item is not, without more, sufficient to establish the fair market value of the replaced property when destroyed. 752 S.W.2d at 575-76. Here, Owner testified only about the cost of a replacement tire and said she did not know the market value of the replaced tire.

The State argues that the Dallas Court of Appeals held that an owner's testimony of the cost to replace slashed tires was sufficient to establish the fair market value of the slashed tires in *Mohdi v. State*, No. 05-06-00714, 2007 WL 1192275 (Tex. App.—Dallas 2007, pet. ref'd) (mem. op., not designated for publication). In that case, a car owner testified that he spent $600 to replace his slashed tires and that the retail value of the tires on his truck was between $150-$160; the court of appeals found that evidence sufficient to support a finding that the fair market value of the destroyed tires exceeded $500—then the minimum for a Class A misdemeanor of criminal mischief. *Id.* at *1-2. That court distinguished *Deas* because the owner in *Deas* testified that he did not know the value of his property, whereas there was no such testimony in *Mohdi*. *Id.* at *2. In this case, like in *Deas*, Owner testified that she did not receive a valuation for the destroyed tires but knew only the cost of the replacement tires.

The evidence does not support the finding that the used tire had a fair market value of at least $100 at the time Newsom destroyed it. The record contains no evidence of the fair market value of the tire when Newsom destroyed it and no showing that the fair market value of the destroyed tire could not be ascertained. Though the record contains evidence of the replacement cost of the tire and testimony establishing that we must assume the destroyed tire was used for at most nine months and nine days, the record contains no evidence of what that tire cost when new, how much the tire was used, and how much value remained.

The State provided testimony and receipts for tire-purchase costs totaling $302.77. But, even if good practices favor replacing tires a pair at a time, the jury could only consider the value of a single tire to calculate the pecuniary loss because Newsom destroyed only one tire and Owner retained the other replaced tire. A receipt showed a single tire cost $105—$97 for the tire plus $8 tax. A separate receipt showed additional fees for a TPMS service ($3), a valve stem ($3),

and a tire fee ($1.50). Even if we assume without deciding that these fees and the tax are part of the fair market value, the total is $112.50. But there is no evidence regarding the value of the destroyed tire when it was purchased nor of its depreciated value. The tire, purchased sometime in 2020, had at least nine months of use when destroyed. There is no evidence of how to calculate the depreciation of tires, thus there is no evidence of the fair market value of the tire when destroyed.[2]

Though the record contains evidence of the cost to replace the destroyed tire, that evidence does not establish that the fair market value of the destroyed tire was at least $100; because the record contains no evidence that the fair market value could not have been ascertained, the replacement cost does not establish the amount of pecuniary loss. *See* Tex. Penal Code § 28.06(a); *see also Deas*, 752 S.W.2d at 575-76; *Phillips*, 672 S.W.2d at 887. Even construed most favorably to the verdict, the record does not contain legally sufficient evidence to support the verdict. We sustain Newsom's point of error to the extent that he requests reversal of his

---

[2] Even if the jury could use its common knowledge to calculate a linear rate of depreciation of value based on the use of the first set of tires on the vehicle, the replacement cost does not provide legally sufficient evidence to support a depreciated fair market value of at least $100. The vehicle was purchased in October 2017 and the original tires were replaced in 2020. Construed most favorably to the verdict—the longer the tires ran, the lower the depreciation rate for tires used by Owner—the previous tires lasted at most 39 months (vehicle purchased on October 1, 2017 and tire replacement on December 31, 2020). There is no evidence of why the previous tires were replaced in 2020, how their quality and cost compared to the tire that Newsom destroyed, or whether Owner used the tires in 2021 comparably to how she used them in 2017-2020.

If we assume that all of the tires used on this vehicle were of comparable value when new and that their value depreciated at the same linear rate over time, the original tires depreciated at $2.88 per month ($112.50 / 39 months). After nine months of use and depreciation at that rate in 2021, the tire would have had a fair market value of $86.40 when destroyed. The record contains legally insufficient evidence to support a finding that Newsom destroyed a tire valued at least $100 when he destroyed it.

conviction for the Class B misdemeanor of criminal mischief. That does not conclude our review of the trial court's judgment, however.

The Texas Rules of Appellate Procedure authorize a court of appeals to reform a judgment of conviction after a jury trial to reflect conviction for a lesser included offense if the court determines the evidence is insufficient to support a conviction for the greater offense. *See* Tex. R. App. P. 43.2(c), (d); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). After concluding that the evidence is insufficient to support an appellant's conviction for a greater-inclusive offense, a court reviews whether to reform the judgment to reflect a conviction for a lesser-included offense by answering two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? *Thornton v. State*, 425 S.W.3d 289, 299-300 (Tex. Crim. App. 2014). The answer to both questions in this case is yes.

The trial court instructed the jury to convict Newsom of the Class B misdemeanor if it found beyond a reasonable doubt that Newsom

> did then and there intentionally or knowingly damage or destroy tangible property, to wit: a car tire, by puncturing the tire with a sharp object, without the effective consent of [Owner], and did thereby cause pecuniary loss of $100 or more but less than $750 to the said owner

The trial court further instructed the jury that, if it did not find Newsom guilty of the Class B misdemeanor, but nevertheless believed that Newsom did

intentionally or knowingly damage or destroy tangible property, to wit: a car tire, by puncturing the tire with a sharp object, without the effective consent of [Owner], and did thereby cause pecuniary loss of less than $100, you will find the defendant guilty of the offense of Criminal Mischief—Class C.

When the jury found Newsom guilty of the Class B misdemeanor, it necessarily found every element of the Class C misdemeanor except for pecuniary loss of less than $100. As set out above, the record contains the text message in which he threatened that Owner would be replacing a tire if she did not answer her door, testimony that she saw him walk to her vehicle and stab it after she did not answer his knocking, and pictures of the slashed tire. The evidence is legally sufficient to support finding Newsom guilty of criminal mischief involving destruction of property with a fair market value of less than $100, a Class C misdemeanor.

## CONCLUSION

We modify Newsom's judgment of conviction for the Class B misdemeanor of criminal mischief to reflect that he was convicted of the Class C misdemeanor of criminal mischief and affirm the judgment of guilt as modified. We reverse the part of the judgment imposing sentence and remand to the county court for a new punishment hearing for that offense.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Modified and Affirmed in Part, Reversed and Remanded in Part

Filed: August 25, 2022

Do Not Publish