# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00137-CR

**Joseph Anthony Riley, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2020-275, THE HONORABLE STEPHANIE BASCON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Joseph Anthony Riley challenges his conviction for the second-degree offense of prostitution with a child under 18 years of age. *See* Tex. Penal Code § 43.02.[1] In two issues on appeal, he challenges the sufficiency of the evidence supporting his conviction and the trial court's denial of his motion for new trial. We affirm.

## BACKGROUND

At trial, Tommy[2] testified that on February 12, 2020, he was working at a car wash when a man who introduced himself as "Joseph," later identified as Riley by law enforcement, arrived at the car wash in a large truck with his three young children in the car. Riley asked Tommy if he wanted an additional job, and Tommy answered affirmatively and

---

[1] The offense has since been recodified. *See* Tex. Penal Code § 43.021 ("Solicitation of Prostitution").

[2] Because the victim was a minor at the time of the offense, we will refer to him by a pseudonym to protect his privacy. *See* Tex. R. App. P. 9.10(a)(3).

asked Riley what the job was. Tommy testified that based on Riley's driving a large truck, Tommy assumed the job was "labor help" or "construction" related. Riley would not answer what the job was but offered Tommy "$1,200 every time" at a frequency of twice a week. Tommy testified that Riley kept looking at Tommy's crotch area during the conversation. Tommy gave Riley his phone number, and then Riley proceeded through the car wash.

Tommy testified that while Riley was going through the car wash, which took a couple minutes, he called Tommy three times. Tommy answered the third call, and Riley asked him if there was "some kind of back room or bathroom" they could meet in. Tommy told him he would meet him in the lobby of the car wash. Riley met him in the lobby where Tommy was sitting at a table, and Riley stood next to the table. Tommy testified that Riley was very "forward" and was not "embarrassed at the time." In response to Tommy asking about the type of work that Riley was offering, Riley pointed at Tommy's crotch and said, "I want that in my mouth" and "I just want you to ram me." Tommy testified that he was scared, the room felt like it was spinning, and he felt like he was going to pass out. Tommy thought Riley was going to attack him, jumped out of his chair, and told Riley, "I'm not that kind of person; that's just not me," and "I don't think my parents would be okay with that either." Riley then asked Tommy how old he was, and after Tommy told him he was 16, Riley commented that he thought he was 18, walked up to Tommy, shook his hand, and then left. Tommy testified that Riley "was in a rush to get in his truck" but then "took it slow" driving away.

Tommy testified that he broke down and cried "hysterically," as soon as Riley left. Tommy called his mother, and his parents came to the car wash to meet him. Tommy told his manager what happened, and she called the police. Tommy spoke with Officer Thomas Powell when the officer arrived in response to the 911 call. Tommy gave Officer Powell a

description, the first name, and the phone number of the man that had propositioned him. Tommy later discovered that the man's last name was "Riley" through Facebook.

The State presented testimonial evidence from Officer Powell and Tommy's manager. Evidence was presented that linked Riley to the phone number that called Tommy that day and that showed that the cellphone associated with that number was in the area of the car wash around the time of the offense.

The State also presented testimonial evidence of an extraneous offense that occurred about four years prior at an HEB.[3] An HEB employee testified at trial that when he was 25 years old and while working a shift at HEB, Riley offered him $1,000 to have sex with Riley's wife. The employee further testified that Riley offered him $1,000 as a deposit, and an additional $1,000 to go to Riley's home and give his wife "an intimate massage." The employee testified that he suspected based on the amount of money that they were not discussing "a normal massage" but "a sexual massage." He asked Riley, "Are you offering me a thousand dollars cash to have sex with your wife?" and Riley responded that he was.

After hearing all the evidence, the jury found Riley guilty. After a hearing on punishment, the trial court sentenced Riley to 10 years' confinement, probated for 10 years. *See* Tex. Penal Code § 12.33(a) (establishing punishment range for second-degree felonies at any term of imprisonment not more than 20 years or less than 2 years). Riley appealed.

---

[3] The extraneous offense evidence was admitted over defense counsel's Rules of Evidence 403 and 404(b) objections. The State argued to the trial court that the evidence was admissible because it was not being offered for the purposes of character or conformity but for the purposes of showing a lack of mistake regarding what the money was being offered for and to rebut the defense's theory of fabrication by the victim.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Riley contends that the evidence was insufficient to support the jury's verdict because there was no evidence presented that Tommy agreed to engage in sexual conduct for money with Riley.

When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the

4

guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

"In some cases, . . . a sufficiency-of-the-evidence issue turns on the meaning of the statute under which the defendant has been prosecuted" and "[t]hat question, like all statutory construction questions, is a question of law, which we review *de novo*." *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). "The overarching rule of statutory construction is that we construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended." *Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015). "In ascertaining the plain meaning of a word, we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *see* Tex. Gov't Code § 311.011 (addressing common and technical usage of words in construing statutes). Appellate courts also interpret statutes "together and harmonized, if possible," to give effect to all of the statutory provisions. *See Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013). Appellate courts "presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018). "If the plain language is clear and unambiguous," the "analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Id.* (quoting *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App.

5

2012)). Thus, we do not consider extratextual factors or legislative history unless the statutory language is not plain, but rather is ambiguous, or if the plain language of a statute would lead to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

At the time of the charged offense the statute stated in relevant part:

> (b) A person commits an offense if the person knowingly offers or agrees to pay a fee to another person for the purpose of engaging in sexual conduct with that person or another.
>
> . . . .
>
> (c-1) An offense under Subsection B is a Class A misdemeanor, except that the offense is:
>
> . . .
>
> > (2) a felony of the second degree if the person with whom the actor agrees to engage in sexual conduct is:
> >
> > > (A) younger than 18 years of age, regardless of whether the actor knows the age of the person at the time of the offense

*See* Act of May 29, 1993, 73rd Leg. R.S., ch. 900, § 1.01, sec. 43.02, 1993 Tex Gen Laws 3586, 3681 (amened 2001, 2009, 2011, 2013, 2015, 2017), recodified by Act of May 28, 2021, 87th leg., R.S., ch. 807, §§ 28-29, sec. 43.021, 2021 Tex. Gen. Laws 1929, 1939 (current version at Tex. Penal Code 43.021).

Riley contends that for the offense to be a second-degree felony under subsection (c-1), there must be an "agreement" between the child victim and the actor. He argues that the effect of the words "offers or agrees" in subsection (b) contrasted with the use of "agrees" and the absence of "offers" in subsection (c-1) requires both parties to agree to engage in the sexual conduct before it may be a second-degree felony offense. Based on this view of the statute,

Riley contends that the evidence was insufficient to support his conviction because there was no evidence that Tommy agreed to engage in sexual conduct.

While there was no evidence presented that Tommy ever agreed to engage in sexual conduct with Riley, we are unpersuaded that Tommy's agreeing to engage in sexual conduct or a mutual agreement between both parties is a required element of the offense. The word "agreement" does not appear in the statute. The placement of the word "agrees" in subsection (c-1) is attached to the actor and not the person who is under 18 years of age. Thus, the plain and unambiguous language of the statute does not require an "agreement" or for the child victim to "agree." Rather, it requires the actor—here, Riley—to "agree" to engage in sexual conduct with a person who is younger than 18 years of age—here, Tommy.

We do not consider this to be an absurd result. This interpretation of the statute is consistent with the fact that the Texas "Legislature has determined that children thirteen and younger cannot consent to sex." *See In re B.W.*, 313 S.W.3d 818, 824 (Tex. 2010) (explaining that because children under 14 years of age lack legal capacity to consent, they cannot have "'knowingly agreed' to engage in sexual conduct for a fee"); *May v. State*, 919 S.W.2d 422, 424 (Tex. Crim. App. 1996) (explaining "that a child under fourteen cannot legally consent to sex, because subsection (a)(2) [of Section 22.011 of the Penal Code] is a strict liability offense not requiring proof that the victim did not consent"). Because we have concluded that the statute is not ambiguous and that the plain language does not lead to absurd results, we do not address Riley's extratextual sources and legislative history arguments. *See Boykin*, 818 S.W.2d at 785.

We next analyze whether the evidence was sufficient to support the jury finding that Riley agreed to engage in sexual conduct with Tommy. We conclude that it is sufficient. Tommy testified that while Riley was in his truck at the car wash, he offered Tommy a large

amount of money while staring at Tommy's crotch and being evasive about what kind of work it was. Tommy also testified that he replied affirmatively that he wanted a job and gave Riley his phone number. The jury could have reasonably inferred that Riley thought, although incorrectly, that he and Tommy had agreed to engage in sexual conduct for money at that time. The testimony of the HEB employee supports this inference because it provides an example of a time that Riley was also vague about the job he was offering, but the other person understood that the money being offered was for a job that was sexual in nature. Riley's behavior after having the initial conversation with Tommy at the car wash also supports the reasonableness of this inference. Tommy testified that a car wash takes a couple of minutes and that during that time Riley had called him three times, and when Tommy answered, Riley asked if there was a private place that they could meet. Tommy testified that Riley was "forward" with him and unembarrassed in the lobby, and that Riley's demeanor changed after Tommy made clear he was not interested and told Riley his age. Specifically, Riley was no longer "forward" with Tommy but instead shook his hand and quickly left. This testimony supports a reasonable inference that Riley thought he had agreed with Tommy to engage in sexual conduct for money prior to meeting Tommy in the lobby.

Given our standard of review and given the reasonable inferences that could be made from the evidence presented at trial, we conclude that the evidence was sufficient to establish that Riley knowingly agreed to pay a fee to Tommy, a person younger than 18 years of age, for the purpose of engaging in sexual conduct with that person. We overrule Riley's first issue.

## MOTION FOR NEW TRIAL

In his second issue, Riley contends that the trial court abused its discretion when it denied his motion for new trial. For support of this issue, Riley references his arguments and briefing provided for his first issue—that there was no evidence to support that Riley "agreed" to engage in sexual conduct with Tommy. Because we have determined that the evidence was sufficient to support this element, we cannot conclude that the trial court abused its discretion when it denied his motion for new trial on this ground. *See State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007) (explaining that appellate courts review trial court's denial of motion for new trial under abuse-of-discretion standard). We overrule Riley's second issue.

## CONCLUSION

Because we have overruled all of Riley's issues, we affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: February 21, 2025

Do Not Publish

9